GEORGE C. LAWRENZ v. LANGFORD ELECTRIC COMPANY, INC. AND ANOTHER.[1]

November 24, 1939.

No. 32,094.

[1]Reported in 288 N. W. 727.

316

*Arthur H. Lindeman* and *Daniel F. Foley,* for appellant.
*Sawyer & Sawyer,* for plaintiff-respondent.

JULIUS J. OLSON, JUSTICE.

Defendant Langford Electric Company appeals from an order denying its blended motion for judgment notwithstanding or a new trial. Its codefendant has not appealed.

Hereafter we shall refer to appellant as "Langford company" and to the other defendant as the "association."

This was an action to recover treble damages pursuant to the provisions of 2 Mason Minn. St. 1927, § 9585, the claim being that defendants entered upon plaintiff's land "and did, without the leave of plaintiff, wilfully, wrongfully and wantonly cut down and destroy" certain trees, thereby damaging his land to the amount of $1,200, and judgment was asked for treble that amount. The Langford company in its answer denied sufficient knowledge to form a belief as to plaintiff's ownership of the property, hence denied his ownership; that "if this defendant cut any trees belonging to the plaintiff, said trees were cut at the specific request" of the other defendant, "who had previously obtained permission from the plaintiff as this defendant is informed and believes." In other respects the allegations of the complaint were denied. Plaintiff's reply put in issue all new matter. The association's answer admitted plaintiff's ownership of the land but denied the other allegations and specifically alleged "that at no time" had it "authorized or directed anyone to enter upon" plaintiff's premises; and, further, "that if said defendant or any of its agents or servants did enter upon said premises * * *, it was done by the express consent and permission of the plaintiff." Here too plaintiff's reply put in issue the new matter.

Issues thus being framed, the case went to trial. The following facts were established: Plaintiff was the owner and in possession of the involved premises under a contract of purchase giving him such right of possession. The trees complained of

were cut by the tree-cutting crew of the Langford company pursuant to a contract it had entered into with the association. To justify its right to cut the trees, it introduced in evidence an easement, admittedly executed by plaintiff and wife, giving the association the right to cut the trees within a 20-foot limit upon the line of right of way described in said easement. There was no chain or source of title pleaded by any of the litigants. As we have seen, the complaint alleged plaintiff's ownership in general terms and charged defendants with trespass. Each answer alleged generally that plaintiff had consented to the cutting of the trees. No easement or other grant was mentioned. Plaintiff proved, over defendant's objections, that the easement did not describe the area over which the electric service line was to be built. The right of way as described in the grant was erroneous. Mr. Blanchard, president of the association, testified that he called upon plaintiff and explained to him its desire to procure a right of way to build the line. He testified:

"He [plaintiff] said he would grant us the privilege of constructing this line along the west boundary of his farm; and pointing out that there would be some value accrue to him as a result of the line being constructed there, as possibly at some future period he would be rebuilding the house and would want service, he consented to allow the construction, *provided we wouldn't injure any of his trees.*" (Italics supplied.)

Plaintiff's testimony was:

"I said to Fred [Blanchard], 'You go right on the west side of the trees; no trees to be taken.' And Fred said, 'That is just fine, that is just the way we will go.'"

The court instructed the jury that, as to both defendants, the cutting of the trees having been established upon an area not within the right of way intended to be granted, the jury should find the amount of "actual damages sustained by the plaintiff in the loss of his trees. The measure of such actual damages is the difference between the fair market value of the plaintiff's farm

immediately before and immediately after the trees were cut down."

On the question of treble damages the court said:

"The jury will first determine how such [much] actual damages are. We next come to a more difficult question. We have a statute in this state which provides as follows [2 Mason Minn. St. 1927, § 9585]:

" 'Whoever, without lawful authority cuts down or carries off any wood, underwood, tree or timber, or girdles or otherwise injures any tree, timber or shrub on the land of another person or in the street or highway in front of any person's house, village or city lot or cultivated grounds, or on the commons or public grounds of any city or town or in the street or highway in front thereof, is liable in a civil action to the owner of such land or to such city or town for treble the amount of damages which may be assessed therefor, unless upon the trial it appears that the trespass was casual or involuntary, in which case judgment shall be given only for the single damage assessed.' * * * You must determine from the evidence whether, under the circumstances, the cutting of the Lawrenz trees was wilful or whether it was casual. The word casual as used in this statute, means thoughtless, or accidental or unintentional.

"The Langford company is responsible for the conduct of its employes within the scope of their respective duties, even though they may have violated its rules or disobeyed its instructions.

"In determining whether the cutting was wilful or casual, you should take into consideration all the circumstances established by the evidence. The time when the objection was made, to whom it was made, whether or not it was reported by the foreman to the superintendent, the change in foreman, whether the trees were cut before or after the new foreman took charge, whether the foreman or superintendent knew of the objection when the cutting was done, Mr. Blanchard's instructions, when and to whom they were made and communicated, if they were communicated, and all the other circumstances surrounding the cutting. Having

all these circumstances in mind, and giving to each circumstance such weight as you think reasonable and proper, you will then determine in a practical, fair-minded way whether the cutting of the trees was casual or wilful.

"If you find from the evidence that the cutting was wilful, then the Langford company is liable for three times the amount of the actual damages. If you find from the evidence that the cutting was casual, then the Langford company is liable for only the actual damages."

Plaintiff recovered a verdict of $400 for actual damages; and, as against the Langford company, treble that amount, $1,200.

We have quoted rather extensively from the court's instructions for the reason that the question of treble damages is, on the whole, the most troublesome of all the issues raised on this appeal. However, there are other matters that may as well be disposed of first before reaching that point.

■ Plaintiff as vendee in possession of the involved property under an executory contract of sale is the equitable owner of the premises, the vendor's interest as holder of the legal title being merely that of affording him security for the unpaid purchase money. As such vendee he is entitled to recover all damages resulting to his land from trespasses occurring after he becomes such vendee. Hueston v. Mississippi & R. R. Boom Co. 76 Minn. 251, 79 N. W. 92; Summers v. Midland Co. 167 Minn. 453, 209 N. W. 323, 46 A. L. R. 816.

■ The cutting of the trees having been admitted, liability therefor necessarily followed as to both defendants unless the easement was a valid one. "All persons participating in a tort are liable as tortfeasors." 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9643, and cases under note 92. And we have held in many cases that where several persons, even when acting independently and without concert, cause a single injury, they may be sued either jointly or severally at plaintiff's option. Id. and cases under note 97.

The Langford company contends that in order to permit proof of a mutual mistake plaintiff should have affirmatively pleaded in his reply all facts causing or constituting a mistake. As we have already noted, the complaint alleged title generally. Neither defendant pleaded any right to cut the trees upon any specific instrument but contented themselves with the assertion that if the trees were cut by them or either of them it was with plaintiff's consent. No easement or other specified grant was mentioned. Both replies as to this feature were general denials. Under our decisions, defendants could, under the pleadings as they stood, make proof of any fact which would go to show plaintiff's consent. Obviously there could be no trespass if there was consent. The general rule is that "anything that tends to controvert directly the allegations in the complaint may be shown under a general denial." Bond v. Corbett, 2 Minn. 209 (248), 218. That language was cited with approval in Johnson v. Oswald, 38 Minn. 550, 552, 38 N. W. 630, 631, 8 A. S. R. 698, the court in that case saying:

"In many cases it might put a defendant to great disadvantage if, when the complaint alleges only the fact of title, without disclosing by what means plaintiff claims to have acquired it, defendant must anticipate plaintiff's evidence as to the source of title, and plead expressly facts to do away with the effect of it."

In Wakefield v. Day, 41 Minn. 344, 43 N. W. 71, plaintiff alleged title generally. Defendant's answer was a general denial. Under it she sought to show that plaintiff's deed was in fact a mortgage. The court held this proper, saying [41 Minn. 346]:

"* * * upon proof of title by him [plaintiff] through such deed under his general allegation of ownership, the defendant was entitled, under her denial of such allegation, to show that he in fact acquired no title or conveyable interest in the land, but that the deed to Enos Day was given as security only. She was not obliged to anticipate the nature of his evidence, and set up specifically in her pleading defences to a deed which he might introduce

under his general allegation of title. Her answer was as good as his complaint, . * * *."

"This has been uniformly accepted or recognized by this court, by both decision and dictum, as the correct rule." Cumbey v. Lovett, 76 Minn. 227, 230, 79 N. W. 99, 100. (Citing many cases.)

We have referred to answers, and the cited cases deal therewith only. We think, however, where, as here, the issue of consent is raised generally by the answer, plaintiff's reply should be considered in respect thereto like an answer which denies allegations of the complaint. It was so considered in Shearer v. Barnes, 118 Minn. 179, 197, 136 N. W. 861.

■ That there was mutual mistake in respect to the location of the right of way for the electric line as described in the grant is established beyond question. The error arose by reason of the fact that plaintiff's land included ten acres along the boundary of the 120 acres described as government subdivisions. The whole was a 130-acre farm. Mr. Blanchard, a long-time and trusted friend of plaintiff and a near-by neighbor, undertook to and did prepare the easement grant. He was acting for the association. His act was its act. Instead of describing the land over which the easement was to go he followed the line of the 120 acres and mistakenly laid it there instead of along the edge of the ten acres where both parties intended it should be and where it could be laid without harm to plaintiff's trees. We have heretofore quoted some of the testimony with respect to the actual agreement made, so as to this feature we need not further comment.

■ A mutual mistake having been established, the so-called easement was no longer a barrier to plaintiff's cause and constituted no defense thereto. That relief from a mistake may be granted defensively as well as offensively has long been established. Leach v. Leach, 162 Minn. 159, 162, 163, 202 N. W. 448; 5 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 8337, and cases under note 30.

■ The record discloses ample evidence upon which the jury could find that not only were the servants and agents of the Langford company informed by plaintiff that no tree was to be

cut but that likewise they were informed and directed to go to Mr. Blanchard, who represented the association, and that he too distinctly told them that no trees must be cut. The Langford company went ahead and did just the opposite in spite of the notice so given, relying perhaps upon its contract with the association. Obviously that contract was not binding upon plaintiff, who was not a party to it and had nothing to do in respect thereto. The rights and remedies arising under the contract between the Langford company and the association are not presently involved. Whatever these are they must be determined between the parties thereto.

We may assume the accuracy of the statement of law as contained in defendant's quotation from Wooden-Ware Co. v. United States, 106 U. S. 432, 434, 1 S. Ct. 398, 400, 27 L. ed. 230, 231, that "where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern." Yet that does not solve our problem, for "inadvertence or mistake" is not, as a matter of law, established. It was a fact issue. We think the trial court took great pains to instruct the jury in such fashion as to lead them to a correct result. It defined "casual" as meaning "thoughtless, or accidental or unintentional." Defendant has not pointed out wherein the definition is defective. A better or more complete definition was not asked. Webster's New International Dictionary (2d) 1935, defines the word as "happening or coming to pass without design, and without being foreseen or expected; coming by chance"—that the word is synonymous with "* * * unforeseen, unpremeditated, * * * fortuitous * * *." For other definitions, see 2 Wd. & Phr. (1 ser.) p. 1003; 1 Wd. & Phr. (2 ser.) p. 590; and 1 Wd. & Phr. (3 ser.) p. 1052. When one reads the court's definition with what immediately follows, it seems farfetched to suppose the jury was or could be misled. The charge as a whole when applied to the facts in this case seems entirely appropriate. Evidently the court had before it our de-

cision in Helppie v. Northwestern Drainage Co. 127 Minn. 360, 361, 149 N. W. 461, 462, where it is said:

"The law is now thoroughly well settled in this state that the master or principal is responsible for the torts of the servant or agent committed within the scope of the employment even if contrary to orders, * * *." (Citing several cases.) And (at page 362), "That extends also to infliction of punitive damages." (Citing cases.)

See also State v. Shevlin-Carpenter Co. 102 Minn. 470, 113 N. W. 634, 114 N. W. 738; Mississippi River L. Co. v. Page, 68 Minn. 269, 71 N. W. 4.

We think the evidence sustains the verdict that the cutting of the trees was not casual, inadvertent, or the result of an honest mistake, hence, under the statute, treble damages could be allowed. "The facts upon which the question of treble damages depends must be passed upon by the jury, and not by the court." Tait v. Thomas, 22 Minn. 537, 538. Nor is there here any proof that the tree-cutting crew was not acting within the scope of their authority. "The fact that the actual appropriation of the lumber [here trees] was the result of the acts of defendant's employes does not relieve him [defendant]; that is settled by Helppie v. N. W. Drainage Co. [127 Minn. 360, 149 N. W. 461]." Huovila v. Frederick, 165 Minn. 358, 360, 206 N. W. 443, 444.

■ The verdict is not excessive. There is competent evidence that the land depreciated in value by virtue of the cutting of plaintiff's shade trees to the extent of $10 an acre, i. e., $1,300 actual damages. The verdict was for $400 as actual damages, and treble damages as against the Langford company, $1,200.

The questions of both actual and treble damages were for the jury, and the respective amounts found are sustained by the evidence.

Order affirmed.