LANGFORD ELECTRIC COMPANY, INC. v. EMPLOYERS MUTUAL INDEMNITY CORPORATION AND ANOTHER.[1]

May 9, 1941.

No. 32,757.

[1]Reported in 297 N. W. 843.

*Fletcher, Dorsey, Barker, Colman & Barber* and *Henry Halladay,* for appellant.

*Cummins & Cummins* and *Theodore Christianson, Jr.,* for respondents.

HOLT, JUSTICE.

Action to reform a public liability insurance policy issued by the one defendant and taken over by the other and recover two losses sustained. Findings of fact and conclusions of law were in favor of defendants. Plaintiff appeals from the order denying its motion for amended findings or a new trial.

Plaintiff, a corporation, was engaged up to 1937 in the business of installing electricity in buildings and had carried public liability insurance with the defendant Employers Mutual Indemnity Corporation for 1935-1936. Defendant issued to plaintiff a like policy May 15, 1937, entitled Manufacturers' and Contractors' Policy, insuring plaintiff against loss for one year from and after said date, the policy being numbered 3,310,165. Thereafter, in June, 1937, defendant Employers Mutual Liability Insurance Company took over the policies and insurance contracts theretofore issued by the first named defendant. So the Employers Mutual Liability Insurance Company will be hereinafter referred to as the insurer, plaintiff as the insured, and the policy numbered 3,310,165 as the policy. In August, 1937, the insured embarked in a new line of business, namely, the construction of rural electric transmission lines for coöperative corporations, for which funds were furnished by the government under the auspices of the Rural Electrification Administration, and on the 12th of said month the

insured entered a contract for the construction of such transmission line in Dakota county with the Dakota County Electric Cooperative; and on August 18, 1937, a similar contract with the Fillmore County Coöperative Electric Association to construct an electric transmission line in the counties of Fillmore and Winona. The two contracts the insured made with said coöperatives conformed to the requirements of the administrator of the federal Rural Electrification Administration. The insured received a letter, dated August 12, 1937, from the said administrator, stating:

"Part II, Section 4 of the proposed Construction Contract between The Dakota County Electric Cooperative, Farmington, Minn., and your corporation, requires that you maintain adequate workmen's compensation insurance, public liability insurance in limits of $25/50,000 against bodily injuries or wrongful death and $10,000 against property damage, resulting from the construction of the project and the operation of owned or hired motor vehicles used in connection with the project.

"We require the submission of duplicate original policies for our examination to be retained in our files. We, therefore, request that you send them to us at the earliest possible moment."

The insured exhibited this letter to the insurer and asked for coverage. No information was given as to the terms of the insured's contract with the Dakota County Electric Co-operative. Nor was that contract or the contract with the Fillmore county coöperative ever shown to the insurer. The insurer sent to the insured riders to be attached to the policy, reading:

"The limits and rates for bodily injury liability in connection with operations for the Dakota County Electric Co-operative, Farmington, Minnesota, Job Minnesota 65 Dakota [County], being done through the Rural Electrification Administration shall be:

"Limit One Person $25,000; Limit One Accident $50,000 * * *""

A like rider was obtained and attached to the policy increasing bodily injury liability in the same amounts in connection with

operations for the Fillmore county coöperative. Each of these riders by its terms became effective as of August 17, 1937. Later, and effective as of September 28, 1937, this rider was executed and attached to the policy, reading:

"Add: Minnesota
3448 Electric light or power line construction—
N. P. D. with Electric Light or Power Companies

|  | Cov A | Cov B |
|---|---|---|
| If Any | 1.056 | .60 |

Property damage limits are increased to $10,000 each accident; $25,000 aggregate, to apply on the operations for the Fillmore County Electric Cooperative Association, Preston, Minnesota, and the Dakota County Electric Co-operative, Farmington, Minnesota. The following rates apply: * * *"

The insured received and attached said three riders to the policy. A copy of the policy and the three riders and also a copy of the insured's workmen's compensation policy were forwarded to the Rural Electrification Administration at Washington, D. C. October 12, 1937, with a letter from the insured calling attention to the enclosures and ending with these words: "We trust that this will complete your files, and if there is any further information you desire please advise us." Nothing further was thereafter heard from the Rural Electrification Administration.

In constructing the Dakota county line the insured wrongfully and unlawfully cut some trees on land owned by Dorothy Deaver, and she sued the insured for treble damages for willful trespass. The insured settled the suit without ever having notified the insurer thereof or requesting it to defend. It is plain that under the terms of the policy there is no right of recovery for the Deaver loss. In the construction of the Fillmore county electric transmission line, trees were cut by the insured on the land of one Lawrenz, and Lawrenz sued the insured to recover treble damages for willful trespass. The defense of that suit was properly tendered the insurer, but it declined on the ground, among others, that

the policy did not cover willful trespass. Lawrenz recovered treble damages. The insured appealed, but this court affirmed. Lawrenz v. Langford Elec. Co. Inc. 206 Minn. 315, 288 N. W. 727. The facts are there fully stated. The insured now seeks to recover the amount paid Lawrenz, including attorney's fees and expenses.

The assignments of error in this court are reduced to two: (1) That the court erred in concluding that the evidence did not justify a reformation of the policy; (2) that the court erred in construing the policy as written so as to deny recovery.

On the first proposition it must be kept in mind that to warrant reformation the evidence must be clear, persuasive, and convincing. Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 246 N. W. 477. Here the whole transaction was between the secretary of the insured, who appears to have been entrusted with its insurance business, and the one in charge of the insurer's office. The secretary merely exhibited the letter above mentioned from the Rural Electrification Administration and asked for coverage. No contract with either the Dakota county coöperative or with the Fillmore county coöperative was shown, nor was any information given as to their terms. No new policy was asked for. It apparently was taken for granted that anything that would satisfy the Rural Electrification Administration as to increased coverage was all that was necessary. The insured's secretary was perfectly aware of the fact that public liability insurance, workmen's compensation insurance, and motor vehicle insurance policies were carried. For several successive years public liability insurance policies had been issued to this insured and had been in its files. The secretary received and attached the three riders to this policy in suit, had charge of the letter mentioned and the correspondence with the Rural Electrification Administration. There are charges in the complaint of deception, fraud, mistake, and inequitable conduct on the part of the insurer, but evidence is entirely lacking from which a suggestion of fraud, mistake, or inequitable conduct could be inferred. We are clear that the court rightly refused reformation

Miller v. Norwich Union Ind. Co. 193 Minn. 423, 258 N. W. 747.

The insurer urges that this suit was brought, pleaded, and tried on the theory that reformation was absolutely necessary in order to recover, and the insured should not now be allowed to take the position that the policy is open to construction so as to cover the loss sustained in the Lawrenz litigation. We think this point too technical. If the policy with riders attached fairly and reasonably construed covers willful trespass, recovery should be had even though the insured failed in the effort at reformation. The coverage of the policy is "(A) Bodily Injury Liability"—not here involved—and "(B) Property Damage Liability," wherein the insurer agrees:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the operations hereinafter defined."

Operations are thus defined:

"(a) The ownership, maintenance, occupation, or use of any premises owned, leased, or rented by the named insured and used in the named insured's business, and the use of such part of any other premises as the named insured may occupy temporarily for the sole purpose of carrying out a contract for the performance of work for another.

"(b) The operations of any employee of the named insured while engaged in the performance of duties which are incidental to the named insured's business."

As to "Exclusions," the provisions are:

"This policy does not apply: * * * (i) under coverage B, to property owned by, leased to, rented to, hired by, or in charge of the insured or any employee of the insured;"

Then, under Limits of Liability, is this:

"The limit of property damage liability expressed in the declarations as applicable to 'aggregate' is the total limit of the company's liability for all damages arising out of injury to or destruction of property, including the loss of use thereof, caused by all accidents during the policy period."

The coverage A—Bodily Injury Liability—is exactly in the same language as coverage B—Property Damage Liability—viz., "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * caused by accident and arising out of the operations hereinafter defined."

One of the undertakings of the insurer was to:

"(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company shall have the right to make such investigation, negotiation, and settlement of any claim or suit as may be deemed expedient by the company."

The insured insists that under Minnesota Elec. Distributing Co. v. U. S. F. & G. Co. 173 Minn. 114, 216 N. W. 784, the insurer breached its agreement to defend the Lawrenz suit and, in any event, should be held liable for the expenses and attorneys' fees paid by the insured in defending. But under the decision in Lyman Lbr. & Coal Co. v. Travelers Ins. Co. 206 Minn. 494, 289 N. W. 40, where there is no coverage by reason of an exclusionary clause, there is no obligation to defend. So the determinative inquiry is: Does this policy as to property damages cover loss sustained by the insured from willful trespass? The insured is a corporation and can only act through its officers, agents, or servants. As to both bodily injury and property damage, the policy covers the loss "caused by accident and arising out of the operations hereinafter defined." The operations are defined as heretofore set out, and

are limited to the building and premises owned, occupied, or used permanently or temporarily by the insured to carry on the business. It does not cover or attempt to cover all the property in Fillmore or Winona counties which the insured's officers, agents, or servants may unlawfully or wrongfully destroy. The insurer by refusing to defend the insured in the Lawrenz suit is concluded by implications contained in the verdict and judgment therein, *viz.*, that the trees for the destruction of which he sued were not cut by accident or mistake, but willfully and wrongfully. Treble damages were awarded by the verdict, 2 Mason Minn. St. 1927, § 9585. That the insurer is concluded by that verdict is well demonstrated in Miller v. U. S. F. & G. Co. 291 Mass. 445, 197 N. E. 75. The record in Lawrenz v. Langford Elec. Co. Inc. 206 Minn. 315, 288 N. W. 727, shows very clearly that the trespass was not casual or accidental, committed by mere servants, but was by the direction of the one in charge of insured's operations with full knowledge of its wrongful character. The trees cut were not even adjacent to the easement Lawrenz had granted whereon the insured was to install the electric transmission line. The policy excludes from coverage "liability assumed by the insured under any contract or agreement." So it is plain that the policy does not cover loss sustained by the insured from any breach of the contract the insured had with the Fillmore coöperative in regard to the construction of the electric power line. The cutting of these trees for which the insured paid Lawrenz damages was not caused by accident upon any premises the insured had the right to occupy.

The insured cites cases involving bodily injury liability, and contends that the language of the insuring clause being the same in both, *viz.*, of liability and imposed by law for damages "caused by accident and arising out of the operations hereinafter defined," the willful trespass may from the standpoint of Lawrenz be considered an accident. It is to be noted that the bodily injury involved in those cases was sustained upon the premises of the insured by an invitee or one not wrongfully there. Ohio Cas. Ins. Co. v. Welfare

Finance Co. (8 Cir.) 75 F. (2d) 58; E. J. Albrecht Co. v. Fidelity & Cas. Co. 289 Ill. App. 508, 7 N. E. (2d) 626; Georgia Cas. Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A. L. R. 408; Washington Theatre Co. Inc. v. Hartford Acc. & Ind. Co. 9 N. J. Misc. 1212, 157 A. 111; Floralbell Amusement Corp. v. Standard Surety & Cas. Co. 256 App. Div. 221, 9 N. Y. S. (2d) 524; Westerland v. Argonaut Grill, 187 Wash. 437, 60 P. (2d) 228; Fox Wisconsin Corp. v. Century Ind. Co. 219 Wis. 549, 263 N. W. 567.

We do not deem it needful to determine whether or not under the property insurance clause the damage or destruction be considered as caused by or resulting from an accident in respect to the owner of the property or in respect to the one doing the damage or destruction. We think the policy does not cover intentional willful trespass of the insured. The insured had an easement over Lawrenz's farm whereon it could lawfully install the electric transmission line. It is readily conceivable that in so doing property adjacent to the easement could accidentally be injured or destroyed, and no doubt the policy affords coverage for loss through such accidental damage. But in the Lawrenz suit this court said [206 Minn. 322, 288 N. W. 731]:

"The record discloses ample evidence upon which the jury could find that not only were the servants and agents of the Langford company informed by plaintiff that no tree was to be cut but that likewise they were informed and directed to go to Mr. Blanchard, who represented the association, and that he too distinctly told them that no trees must be cut. The Langford company went ahead and did just the opposite in spite of the notice so given, relying perhaps upon its contract with the association [the Fillmore coöperative]."

Under 2 Mason Minn. St. 1927, § 9585, accidental injury or destruction of trees does not give rise to treble damages. It is only the willful and intentional cutting of these trees by direct authority of the insured that warranted the verdict that was rendered. The trees cut were not even near the easement granted for the

work the insured was doing. A different situation is disclosed in the cases above cited, and others, where public liability policy issued to cover loss for bodily injury caused by accident to one operating a public place like a theater or place of amusement. Coverage there extends to unprovoked assaults committed upon an invitee by an agent or servant in charge. But of course such assault if committed away from the place of the insured and not within the scope of the agent's or servant's duties would not be covered. We think in the case at bar the exclusionary provisions above referred to did not extend the coverage of this policy to the place where the insured wrongfully, intentionally, and willfully cut and destroyed Mr. Lawrenz's trees.

The order is affirmed.

