VIRGIL C. WEIS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.[1]

April 30, 1954.

No. 36,243.

---

[1]Reported in 64 N. W. (2d) 366.

142

*Johanson, Winter & Lundquist,* for appellant.
*Hall & Forbes* and *Gordon Forbes,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment and decree of the district court in favor of plaintiff.

This is an action to recover attorneys' fees from defendant State Farm Mutual Automobile Insurance Company allegedly incurred in the defense of actions brought by third parties against plaintiff, Virgil C. Weis, its insured.

On May 19, 1951, plaintiff, Weis, owned an automobile insurance policy issued by defendant, which policy was in full force and effect at that time. About 8:15 in the evening on that date the Weis automobile, while being driven by him, came in contact with a car driven by one George James. On July 12, 1951, Weis was served with complaints in actions brought against him by George James and Anna James, his wife. The complaints alleged that Weis had negligently, carelessly, and recklessly, deliberately, and unlawfully run into the rear of the James automobile and that he wantonly, maliciously, wilfully, and repeatedly did so. Weis took the complaints to his attorney on the same day and he in turn promptly forwarded them to defendant. On July 19, 1951, an adjuster for defendant called on Weis and discussed the occurrences of May 19. According to the adjuster, Weis stated that he had had no accident and referred to the situation as the famous bumping case and further stated that he, Weis, could not see how defendant could be involved in the matter at all. However, on that same afternoon Weis, his attorney, and the insurance adjuster had a meeting, at which time Weis signed

a nonwaiver agreement and proof-of-loss statement and gave the adjuster a statement.

On July 25, 1951, defendant informed Weis that it could not defend the pending actions brought by Mr. and Mrs. James because it claimed that no accident had occurred. On September 28, 1951, Weis, through his attorneys, again tendered the defense of the actions to defendant and advised it that the cases were to be on the calendar call in Nobles county on October 9, 1951. Defendant again refused to defend the actions on the ground that no accident was involved and that the entire occurrence resulted from deliberate actions on the part of its insured. The James cases were tried before a jury. A verdict of no cause of action was rendered in favor of Weis in each case, and judgments were entered for him. Thereafter, a demand was made upon defendant insurance company for reimbursement of Weis's attorneys' fees and expenses, which demand was refused by defendant.

This action by Weis for attorneys' fees was then commenced and was tried before the district court upon a written stipulation of facts. As far as is pertinent to our determination of the case, the trial court concluded (a) that the suit papers and facts upon which they were based stated and constituted purported causes of action which were risks within the coverage and defense clauses of the policy; (b) that defendant, by refusing to defend the actions, is concluded by the implications of the judgments of no cause of action entered in the Nobles county district court; and (c) that the reasonable implication from the jury verdicts and judgments entered thereon in Nobles county is that the James suits were groundless and false. The trial court ordered that judgment be entered in favor of plaintiff for $925.

The principal question which we deem determinative on this appeal is whether defendant insurance company was obligated to defend actions brought against Weis, its insured, under the automobile policy of insurance involved, where the insured's personal actions were admittedly deliberate and intentional.

The pertinent provisions of the policy which we must consider are that defendant company agrees with the insured, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions, and other terms of the policy, as follows:

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

*  *  *  *  *

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

Briefly, the damages because of bodily injury, et cetera, which the company agrees to pay under the policy in question must be *caused by accident.* It also agrees to defend any suit against the insured alleging such injuries (caused by accident) referred to in paragraph I, Coverage A, even if such suit is groundless, false, or fraudulent.

The word "accident," as used in an automobile liability insurance policy, in its common signification means an unexpected happening without intention or design. 45 C. J. S., Insurance, § 829, p. 887.

It is our opinion that, limited to the facts and circumstances of this case where the insured was personally operating his own automobile, no accident occurred which was covered by the insurance policy involved. It therefore follows that there was no liability on the part of defendant to defend the case at bar. Here, we can correctly assume, from the insured's own statement, that no

accident occurred. Rather, it appears, from his proof of loss statement furnished defendant (exhibit G), his statement of July 19, 1951 (exhibit H), and his answers to defendant's requests for admissions, that plaintiff himself did not consider that what happened on the evening involved was an accident, but, instead, considered it his own deliberate and intentional act. In his proof-of-loss statement he said:

"* * * I deliberately bumped into the rear of his [James's] car, then got out and reprimanded him for not allowing me to pass by * * * ; I then followed his car for several block and deliberately bumped into the back of his car several times * * *."

Four times in his statement of July 19, 1951, plaintiff reiterated that he had deliberately bumped into the James car, concluding with the statement that he was mad and piqued at James for pulling out in front of him "and for these reasons deliberately bumped into his car as I did." Again, in his answers to defendant's requests for admissions, plaintiff said that it was true that the collisions or bumpings occurred through his intentional contact in colliding with the James car; that he deliberately bumped into it; and that no contact was made by his automobile and the James car other than the result of the intentional and deliberate action on his part. In addition to the above, and undisputed in the record, is the affidavit of the adjuster that after the James car incident plaintiff told the adjuster that he had had no accident but referred to the situation as the famous bumping case.

Seldom could we expect to find a record more convincing than here that plaintiff himself, by his own conduct, statements, and admissions, took the bumping incidents out of the category of an accident and placed them in the category of deliberate and intentional acts on his part. It is therefore our opinion that, where it appears clear from the record that no accident occurred and where the owner himself, by his own statements and admissions, indicated that the incidents complained of were not accidents but intentional and deliberate acts on his part while operating his own automobile, there was no coverage under the policy involved. A policy covering

liability arising from an accident or from injuries accidentally sustained does not cover an injury resulting from the wilful acts of the insured. 45 C. J. S., Insurance, § 829, p. 887. See, also, Miller v. United States F. & G. Co. 291 Mass. 445, 449, 197 N. E. 75, 78, where, although recovery was allowed under the record there because the plaintiff had been held liable in another state for negligence and not for intentional or wilful conduct, the court said in connection with the insurance policy involved:

"* * * The contract does not contemplate recovery by the plaintiff for his own intentional wrong."

In Langford Elec. Co. Inc. v. Employers Mut. Ind. Corp. 210 Minn. 289, 297 N. W. 843, this court held, in connection with an insurance policy covering liability from loss sustained by accident, that the policy as written did not cover intentional and wilful trespass by the insured in cutting trees upon land which it had no right or license to enter.

The situation would be different if someone driving plaintiff's automobile with his consent had done the things complained of here without plaintiff's knowledge. In such a case it is our opinion that defendant would be compelled to defend an action similar to the case at bar under the above-quoted paragraph II of the policy.

In Messersmith v. American Fidelity Co. 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876, plaintiff sued upon defendant's policy of insurance indemnifying him against liability for injuries accidentally suffered by anyone through the maintenance or use of his automobile. The defense was that in violation of the highway law the automobile was driven by an infant under the age of 18, who was not accompanied either by the owner or a duly licensed chauffeur; that this was done with plaintiff's knowledge and under his direction; and that the accident was directly caused by the improper and negligent conduct of the infant while violating the law. The question raised there was whether the indemnity in such circumstances was consistent with public policy. The court recognized the fundamental principle there that no one should be permitted to take

advantage of his own wrong but reasoned that the plaintiff, in entrusting his car to a youth under 18, did not desire or intend that there should be an injury to travelers, even though the act of entrusting the car to the youth was wilful. The court concluded that public policy did not forbid the enforcement of the contract in that case.

Plaintiff, however, cites the rule that an insurer, by refusing to defend the insured in an action against him, is concluded by implications contained in the verdict and judgment therein, citing Langford Elec. Co. Inc. v. Employers Mut. Ind. Corp. *supra;* Miller v. United States F. & G. Co. *supra.* The trial court here so concluded.

While this is the rule, we do not consider it applicable in this case. Here, Weis was sued for deliberately and negligently running into the rear end of the James automobile. According to the record on this appeal, he admits that he did run into the James automobile and that he did so intentionally and deliberately. In the face of this admission, there is no room to draw implications from the verdicts and judgments in the suits by Mr. and Mrs. James against Weis. We cannot draw implications from such verdicts and judgments which would have to be inconsistent with Weis's own admissions.

It may be fairly stated from the rule cited above that under a policy such as this, where an insured, while operating his own automobile, intentionally and deliberately does the very acts for which he is sued, there is no coverage afforded for liability arising from those acts.

As to whether defendant company was obligated to defend the actions in spite of the above considerations, it is our opinion that, where an act is deliberately and intentionally committed by the insured while operating his own automobile, liability for which is not covered by the policy, the insurer is not obligated to defend suits arising from those acts. Lyman Lbr. & Coal Co. v. Travelers Ins. Co. 206 Minn. 494, 289 N. W. 40; Langford Elec. Co. Inc. v. Employers Mut. Ind. Corp. *supra.* Here, again, we are faced with the admissions of plaintiff, from which it is only possible to con-

clude that his acts giving rise to the suit were outside the coverage afforded by the policy.

Judgment reversed.