**HAGEN SUPPLY CORPORATION, a Minnesota Corporation, Appellant,**

v.

**IOWA NATIONAL MUTUAL INSURANCE COMPANY, an Iowa Corporation, Appellee.**

No. 17502.

United States Court of Appeals
Eighth Circuit.

April 29, 1964.

John P. Vitko (of Randall, Smith & Blomquist), St. Paul, Minn., made argument for appellant and filed brief with Donald B. Smith, of Randall, Smith & Blomquist, St. Paul, Minn.

John R. O'Brien (of Tyrrell, Jardine, Logan & O'Brien), St. Paul, Minn., made argument for appellee and filed brief.

Before VOGEL, MATTHES and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

This appeal presents two questions: *first,* whether a policy of insurance issued by appellee (hereinafter referred to as "Insurer") to appellant (hereinafter referred to as "Hagen") affords the latter protection on a claim for injuries sustained by a third party as the result of the discharge of a tear gas device sold by Hagen; *second,* whether Insurer was required under its policy to defend Hagen on the claim asserted against it. The trial court, Judge Larson, held that there was no coverage and that Insurer was not obligated to defend the claim. From this judgment Hagen has appealed.

Diversity of citizenship and the amount in controversy satisfy jurisdictional requirements.

The facts are relatively simple and were established by stipulation.

The "Manufacturers' and Contractors' Liability Policy" was issued to Hagen, a Minnesota corporation, at its place of business in St. Paul, Minnesota. The policy provided that insurance was afforded only with respect to the coverages and divisions that are indicated by specific premium charge or charges, and that the limit of Insurer's liability against each such coverage and division shall be as stated in the policy and subject to all of its terms. Bodily injury liability coverage, pertinent here, was $50,000 each person and $100,000 each accident and applied only to Division 1— "Premises-Operations," for which the premium was $15.65.[1] The bodily injury liability coverage was not provided for Divisions 2—"Elevators," 3—"Independent Contractors," or 4—"Products," and no premium was charged therefor.

Under "Bodily Injury Liability" coverage, Insurer agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * sustained by any person, caused by accident and arising out of the hazards hereinafter defined." The "hazards" were defined as follows: Division 1—"Premises-Operations":

"The ownership, maintenance or use of premises, and all operations."

As noted previously, coverage was not provided for Division 2—"Elevators," and Division 3—"Independent Contractors," and—since these divisions are not relevant here—we omit their definitions. Although Insurer afforded no coverage to Hagen under Division 4—"Products," that division is relevant, and in pertinent part is defined as follows:

"(1) Goods or products manufactured, sold, handled or distributed by the named insured * * * if the accident occurs after possession of such goods or products has been relinquished to others by the named

---

1. This premium is stated as an "advance premium", and under another provision of the policy is declared an "estimate" only, subject to Insurer's computation of the "earned premium" upon the termination of the policy. However, Hagen does not claim that $15.65 was not the actual total premium paid for the bodily injury liability coverage for the one-year period of the policy.

insured * * * and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing * * *."

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed * * *."

Under "Exclusions," the policy provided that it does not apply "under division 1 of the Definition of Hazards, and under coverage C [Medical Payments] to * * * (2) the Products Hazard."

Turning now to the events upon which Hagen's claim is premised, we note the following factual background.

In February, 1957, pursuant to an order received by Hagen through the mail from one Zarychta, a minor, it "shipped" to him at his address in the State of Indiana a tear gas device. Shortly after receiving the device Zarychta discharged it in the presence of one Ronald Fariss, also a minor, and allegedly injured him. In 1959, Fariss filed a suit against Hagen alleging in pertinent part that it acted negligently and in violation of an Indiana statute in connection with the sale of the tear gas device to Zarychta.

Insurer refused the tender of defense of the suit and denied coverage. Hagen took over the defense of the Fariss action and eventually compromised and settled by paying Fariss $3,200. Thereafter, Hagen instituted this action in the United States District Court, District of Minnesota, seeking recovery from Insurer of the amount Hagen paid to Fariss and $10,183.92 allegedly incurred as expenses and attorney's fees in defending the Fariss action.

Before considering Hagen's theory of liability on the part of Insurer, we pinpoint just what protection the policy by its plain terms does and does not provide. It covers claims for bodily injury for which Hagen is legally liable, caused by accident and arising out of the ownership, maintenance or use of the premises described, and all operations—i. e., it provides "Premises-Operations" coverage. It does not afford products liability or completed operations coverage—both included within the "Products" hazard. It further by exclusion provides that coverage under "Premises-Operations" does not apply to "Products."

Hagen does not contend otherwise. Recognizing that the bodily injury coverage is plainly limited to the premises and operations, Hagen asserts that its negligent conduct in selling the tear gas device occurred on the premises described in the policy and that the negligent sale is the hazard that was defined and covered under Division 1 "Premises-Operations." Stated differently, Hagen's position is that the act (negligent sale of device) which was the proximate cause of the injury is controlling, and since this took place on the premises and was a part of its operation, the place of the accident (Indiana) is irrelevant and immaterial in the interpretation of the contract.

Insurer's position is that the Fariss claim arose out of a product or completed operation risk which coverage was not purchased by Hagen; that by exclusion the coverage which was afforded did not apply to the "Products" hazard. More precisely, Insurer argues that the policy provides no protection because: it involved a product sold by Hagen; the accident occurred after possession of the product had been relinquished by Hagen and occurred away from its premises; the accident occurred after all operations connected with the device had been completed.

For reasons presently appearing, we reach the conclusion that Judge Larson properly denied the claim of coverage.

At the threshold, we are mindful that the controversy centers upon the interpretation of the insurance policy and that

the policy was written, issued and delivered to Hagen in Minnesota. Insurer expressly states that Minnesota law is controlling, and Hagen—while not disputing such statement and indirectly admitting its veracity—bases its argument primarily upon the law of several other jurisdictions. While regarding Minnesota law as governing, we—like both parties—will also refer to cases from other jurisdictions to indicate the prevailing weight of authority.

[1, 2] Hagen—relying heavily on an Ohio case, Lessak v. Metropolitan Casualty Ins. Co. of New York, 168 Ohio St. 153, 151 N.E.2d 730 (1958), maintains that it was charged with "negligent selling," that the "selling" was a hazard which arose on its premises and as an incident of its use, and thus that the policy afforded coverage regardless of where the accident occurred. Contrarily, under Minnesota law, the question to be resolved here concerns the place where the accident occurred, not the proximate cause of it. In Hultquist v. Novak, 202 Minn. 352, 278 N.W. 524 (1938), a case involving a factual situation and a policy closely akin to this case, the Minnesota Supreme Court responded to an argument similar to Hagen's in the following language:

> "The place of happening of the accident controls the coverage under subdivision (a). Some circumstances may have occurred on the premises which may have contributed to an injury which resulted from an accident occurring elsewhere. This may have resulted in liability on the part of defendant without coming within the coverage of the policy because the accident did not happen within the area limited by the terms of the contract. We are concerned here with the whereabouts of the accident, not with the question of proximate cause." 278 N.W. at 525.

See also, Lyman Lumber & Coal Co. v. Travelers Insurance Co., 206 Minn. 494, 289 N.W. 40 (1939); Hutchinson Gas Co. v. Phoenix Indemnity Co., 206 Minn. 257, 288 N.W. 847 (1939).

And the Minnesota law in this respect is in accord with the prevailing weight of authority in other jurisdictions. For a comparison of various cases in this general area, see e. g., Standard Accident Insurance Co. v. Roberts, 8 Cir., 132 F.2d 794 (1942); Service Welding & Mach. Co. v. Michigan Mutual Liability Co., 6 Cir., 311 F.2d 612 (1962); Bitts v. General Accident Fire & Life Assur. Corp., 9 Cir., 282 F.2d 542 (1960); Tidewater Associated Oil Co. v. Northwest Casualty Co., 9 Cir., 264 F.2d 879 (1959); New Amsterdam Casualty Company v. Ellzey, 5 Cir., 240 F.2d 618 (1957); U. S. Sanitary Specialties Corp. v. Globe Indemnity Co., 7 Cir., 204 F.2d 774 (1953); Waterman Steamship Corporation v. Snow, D.Or., 222 F.Supp. 892 (1963); Blohm v. Glens Falls Insurance Co., 231 Or. 410, 373 P.2d 412 (1962); Berger Bros. Electric Motors v. New Amsterdam Cas. Co., 293 N.Y. 523, 58 N.E.2d 717 (1944); Brainard v. Aetna Casualty and Surety Co., 17 Misc.2d 810, 187 N.Y.S.2d 435 (1959).

To adopt Hagen's theory would, in our view, broaden and increase the coverage far beyond that contemplated by the parties and for which Hagen paid its premium. Hagen concedes that it did not have "Products" coverage, and further concedes that under the "Premises-Operations" hazard, "Products" coverage was specifically excluded. But—adopting a restrictive view of the "Products" hazard—Hagen asserts that such coverage does not pertain to this controversy because "selling" is not a product. Like the trial court, we are convinced that the "negligent selling" here in issue would have been covered by the "Products" hazard; that Hagen failed to purchase such coverage; and that since the policy is not ambiguous, we cannot now rewrite the policy so as to provide coverage.

In many cases involving products, there are acts or omissions that might subject a manufacturer or seller to liability. To name a few, failure to warn,

defective workmanship, negligent design, illegal sale, misrepresentation, inadequate testing, inherently dangerous objects—all which relate to acts or omissions occurring in the manufacturer's or seller's business operation, occurring on his premises, and occurring prior to delivery of the product to the consumer. Certainly there would be little need to ever purchase "Products" coverage if the "Premises-Operations" clause was designed to cover the foregoing acts or omissions which result in accidents off the premises and after control has been relinquished. As stated in Tidewater Associated Oil Co. v. Northwest Casualty Co., supra, 264 F.2d at 882,

> "In practically every case in which injury or damage is caused by the handling or use of a product, or by a defective condition in such product, the occurrence causing the injury or damage can be traced to some pre-existing negligence. Indeed, were this not so the injured person would have no basis for a tort claim against the insured. Thus, if the allegation of pre-existing negligence were to be regarded as controlling, the result would be to emasculate the product liability exclusion."

Citing cases in which the court found the insurer bound to defend, and in which the court had noted the insurer's failure to distinguish between "hazards" and "accidents," Hagen has attempted to shift emphasis from the place of the accident to the location where the hazard was allegedly created. It is needless for this Court to enter into an extended discussion concerning the definition of the words "hazard" and "accident." For here the "Products" hazard covered *accidents* arising out of the sale of products if the accident occurred off the premises and after possession of the product was relinquished by the insured. Under our facts, the "act of selling" that product, and the attendant results, were not within the purview of the "Premises-Operations" coverage, but—on the contrary— were within the scope of the excluded, unpurchased "Products" coverage.

We have carefully examined the authorities cited by Hagen—including our own cases of St. Paul Fire and Marine Insurance Company v. Coleman, 8 Cir., 316 F.2d 77 (1963), cert. denied, 375 U.S. 903, 84 S.Ct. 191, 11 L.Ed.2d 143 (1963); Bituminous Casualty Corporation v. R & O Elevator Co., 8 Cir., 293 F.2d 179 (1961); and Employers' Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 8 Cir., 214 F.2d 418 (1954). These cases are either factually distinguishable or they were decided under the laws of jurisdictions other than Minnesota. In any event, they are not controlling here.

Proceeding to the second issue in the case, we are obliged to carefully compare the allegations of the complaint filed by Fariss against Hagen with the coverage provided by the policy. Contending that Insurer was required to defend the Fariss claim, Hagen asserts that "the obligation to defend is broader than the obligation to pay since the former is measured by the allegations of the Complaint filed against the insured."

The *contractual* obligation of Insurer, standing alone, militates against Hagen's contention. The relevant portion of the policy provides:

> "With respect to such insurance *as is afforded by this policy* for bodily injury liability * * * the company shall:
>
>> "(a) defend any suit against the insured alleging such injury * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;" (Emphasis supplied).

Neither does the *law* provide support for the position advanced by Hagen. The general rule is that an insurance company under a provision requiring it to defend an action, even if it is groundless, false or fraudulent, is under no duty to defend a claim which is out-

**204**

side the coverage provided by the policy. 7A Appleman, Insurance Law and Practice, § 4684, pp. 448–449 (1962); Annot., 50 A.L.R.2d 458 (1956); Annot., 49 A.L.R.2d 694 (1956).

And Minnesota recognizes the general rule, as appears from this pronouncement in Bobich v. Oja, 258 Minn. 287, 104 N.W.2d 19, 24 (1960):

> "In the first place, an insurer, under an agreement to defend such as we have here, is not bound to defend a suit on a claim outside the coverage of the policy, even though under the terms thereof it is obligated to defend all suits "brought against the insured, whether groundless, false, or fraudulent. In other words, the suit must be based on a claim covered by the policy before the obligation to defend comes into play. Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend."

See also, Crum v. Anchor Casualty Co., 264 Minn. 378, 119 N.W.2d 703 (1963); Weis v. State Farm Mut. Auto Ins. Co., 242 Minn. 141, 64 N.W.2d 366, 49 A.L. R.2d 688 (1954); Langford Electric Co. v. Employers Mut Indemnity Corp., 210 Minn. 289, 297 N.W. 843 (1941); and Lyman Lumber & Coal Co. v. Travelers Ins. Co., supra, 289 N.W. 40.

We recognize, as does Insurer, that the allegations in a complaint are not in all circumstances and situations the decisive factor in determining whether there exists a duty on the part of the insurance company to defend a claim against the insured. Where there are facts extraneous to the allegations in the complaint which are known either to insurer or insured which, if proved, make out a case against the insured which is covered by the policy, the duty to defend exists. We do not deem it necessary to give further consideration to this exception and the circumstances which may bring it into play because no basis for application of the exception can possibly exist here. From the complaint filed herein, to which is attached the policy in issue, and which by reference incorporated the complaint filed in the action instituted by Fariss against Hagen, it appears that Fariss' claim was outside the coverage afforded by the policy. It is likewise manifest that there were no extraneous facts known to either Hagen or Insured which could bring the cause of action within the policy coverage.

We are convinced that the trial court properly ruled both questions. Accordingly, the judgment is

Affirmed.