Jim PLUNTZ, Respondent,

v.

FARMINGTON FORD–MERCURY,
INC., Appellant.

No. CX–91–96.

Court of Appeals of Minnesota.

May 28, 1991.

Review Denied July 24, 1991.

Michael D. Barrett, Cousineau, McGuire & Anderson, Minneapolis, for appellant.

Ernest J. Darflinger, Farmington, for respondent.

Considered and decided by LANSING, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

On December 22, 1989, a number of trees on respondent James Pluntz' property were damaged when a car driven by Bruce Leander left the roadway abutting respondent's property. The car was owned by Leander's employer, appellant Farmington Ford Mercury Inc. (Farmington). Leander lost control of the car after suffering a sudden cardiac and respiratory arrest. Pluntz commenced a trespass action against Farm-ington to recover property damages. The trial court granted summary judgment for Pluntz. Based on the parties' stipulation as to the amount of damages, judgment was entered in the amount of $7843. Farmington appeals from judgment. We affirm.

## FACTS

The facts are not in dispute. Respondent Pluntz is the owner of real property located at 20226 Akin Road, Farmington, Minnesota. Bruce Leander was operating a 1990 Ford Tempo automobile on Akin Road which abuts Pluntz' property. Leander suffered cardiac and respiratory arrest, causing him to lose control of his vehicle. The vehicle left the road, entered Pluntz' land, and collided with 34 Colorado Blue Spruce trees belonging to Pluntz.

Leander was an automobile salesman employed by appellant Farmington. The vehicle he was driving was a "demonstrator" owned by appellant and available for sale. Leander was not performing employment duties or furthering the business of appellant at the time the accident occurred, but it is undisputed Leander was driving the vehicle with the knowledge and unrestricted consent of appellant. Leander was off work due to illness on the day of the accident. Shortly before the accident occurred, Leander stopped at appellant's dealership to pick up his paycheck. Leander spoke briefly to Steve Johnson, the vice-president and general manager of the dealership. Leander told Johnson he was going to the bank and then to do some Christmas shopping. Johnson knew Leander had a dealership demonstrator for personal use.

Pluntz commenced suit against Farmington to recover property damages. The parties brought cross motions for summary judgment. The trial court initially denied the motions, holding there was a fact issue as to whether Leander was acting within the scope of his employment when the accident occurred. Both parties moved for reconsideration of their motions. Upon rehearing, the trial court granted summary judgment for Pluntz. Based on the parties' stipulation as to actual damages, judgment

was entered in the amount of $7843.[1] Farmington appeals from judgment.

## ISSUES

1. Did the trial court err by assessing single damages pursuant to Minn.Stat. § 561.04 (1988)?

2. Did the trial court err by imposing liability on appellant Farmington by operation of Minn.Stat. § 170.54 (1988) (Safety Responsibility Act)?

## ANALYSIS

### Standard of review

On appeal from summary judgment, the function of this court is to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota*, 426 N.W.2d 425, 427 (Minn.1988). This court need not defer to the trial court's conclusions regarding questions of law. *Frost–Benco Electric Association v. Minnesota Pub. Util. Comm.*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

### Damages

■ In awarding single damages to respondent, the trial court applied Minn.Stat. § 561.04, which provides, in part:

*Whoever without lawful authority * * * injures any tree, timber, or shrub, on the land of another person * * * is liable in a civil action to the owner of such land * * * for treble the amount of damages which may be assessed therefor, unless upon the trial it appears that the trespass was casual or involuntary * * * in which case judgment shall be given for only the single damages assessed.*

(Emphasis added). The trial court held the "trespass" was "involuntary" because it was caused by a sudden and unforeseen heart attack. As such, the trial court granted partial summary judgment in favor of appellant Farmington on the issue of treble damages. Respondent was awarded single damages only, which were valued at $7750 pursuant to stipulation.

Respondent concedes the "trespass" was "involuntary" and agrees single damages only were appropriate. Appellant contends, however, the statute does not apply to the facts of this case, arguing there was no "trespass" because the common law element of intent was absent from Leander's act of driving onto respondent's property. Appellant argues that before section 561.04 will apply there must first be an intentional trespass onto the property. Then, appellant argues, only after an initial trespass is established does the statute operate to provide either single or treble damages, depending on whether the subsequent damage to the trees was involuntary or intentional. We disagree.

Leander did not "intentionally" violate respondent's boundaries, but this fact does not enter our analysis. First, "trespass" as used in section 561.04 refers to a trespass to chattels, namely, trees, and not a trespass to land. *See generally Lawrenz v. Langford Elec. Co.*, 206 Minn. 315, 288 N.W. 727 (1939). That is, "trespass" as used in the statute refers to injury to trees, timber or shrubs. Second, although not intentional, the injury to the trees on respondent's property was "without lawful authority," the controlling phrase in section 561.04.

■ The statute applies to the facts of this case. Leander, without lawful authority, caused injury to the trees. Although not malicious nor intentional, the injury to the trees was without permission of respondent and without any other color of lawful authority. Once an injury to trees without lawful authority is established, pursuant to the statute respondent was properly awarded single damages if the injury to the trees was "casual or involuntary." In *Lawrenz* the court defined "casual" as used in the statute to mean

thoughtless or accidental or unintentional, * * * [h]appening or coming to pass

---

1. The parties stipulated the value of each of the 34 trees destroyed was $200, totalling $6800, and the cleanup cost was $950. Also, respondent was awarded costs of $93.

without design, and without being forseen or expected; coming by chance, * * * unforseen, unpremeditated * * * fortuitous.

*Id.* at 323, 288 N.W. at 731. This definition was upheld in *Baillon v. Carl Bolander & Sons, Co.,* 306 Minn. 155, 235 N.W.2d 613, 615 (1975).

The trial court properly awarded respondent single damages pursuant to section 561.04.

## II.

### Safety Responsibility Act

■ Having found the trial court properly assessed damages pursuant to Minn. Stat. § 561.04, we now decide whether liability for those damages was properly imposed on appellant Farmington Ford, the vehicle's owner, pursuant to Minn.Stat. § 170.54, the Safety Responsibility Act. Section 170.54 provides:

Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

The statute creates the relationship of principal and agent between the owner of the car and the person driving it with his consent. *Karalis v. Karalis,* 213 Minn. 31, 4 N.W.2d 632 (1942).

It is agreed appellant consented to respondent's general use of the vehicle. Appellant argues it is not liable for the damages because Leander was not acting within the course and scope of his employment when the accident occurred. We do not find course and scope of employment the issue. In analyzing section 170.54 in the context of an employer/employee relationship, the supreme court has stated:

In an undisputed master-servant situation, *liability under [section 170.54] is predicated upon agency arising out of the scope of consent rather than the scope of employment.* * * * The two may coincide such that the reach of consent equals or exceeds the scope of em-

ployment, or consent may be absent or qualified. * * *.

*Reliance Ins. Co. v. Stack,* 289 N.W.2d 71, 74 (Minn.1979) (emphasis added) (citations omitted).

In *Flaugh v. Egan Chevrolet, Inc.,* 202 Minn. 615, 279 N.W. 582 (1938), a case cited in *Reliance Ins. Co.,* the employer argued it was not liable for the negligent operation of its vehicle by an employee because the operation of the car was not within the scope of employment. *Flaugh,* 202 Minn. at 622, 279 N.W. at 586. The court rejected this argument:

By the express terms of c. 351 [predecessor to section 170.54], the owner's responsibility for a driver's operation of his automobile is based upon the owner's consent to the operation of the car on a public highway by the driver. The consent of the owner is the vital matter. * * * Consent to operate a car is not coextensive or synonymous with scope of employment. * * * The consent may embrace acts outside * * * the scope of the employment. Where the scope of employment measures the consent, it is because the parties have adopted it as the measure of consent, not because the scope of employment in itself is such measure.

*Id.* at 622–23, 279 N.W. at 586 (citation omitted).

Appellant argues that neither section 170.54 or *Reliance Ins. Co.* changed the rule of law that an employer is liable for torts committed by his employee only where the employee was acting within the course and scope of his employment. *See Lange v. National Biscuit Co.,* 297 Minn. 399, 211 N.W.2d 783 (1973). To support this argument, appellant cites the following language directly from *Reliance Ins. Co.:*

[T]he law is clear that unless an employee totally deviates from his employment for purposes that are entirely personal, performance of a function within the scope of employment for personal purposes does not destroy the agency relationship so far as the employer's vicarious liability may be concerned.

*Reliance Ins. Co.*, 289 N.W.2d at 75 (citing *National Battery Co. v. Levy*, 126 F.2d 33, 35 (8th Cir.1942)). However, the court cited this rule in conjunction with its finding that the employee's use of the vehicle in that case involved an activity that qualified as an employment function and therefore, did not exceed the scope of consent given in that case, which was limited with a "business-only" restriction. The court was not applying a "scope of employment" analysis.

Appellant admits Leander was operating the vehicle with its permission and consent. There were no limitations on the scope of consent to use the vehicle. The record shows respondent was aware of and did not object to Leander's use of the vehicle for personal purposes. A "scope of employment" analysis does not apply to this case.

Appellant also argues that when Leader suffered a sudden and unexpected medical emergency it was an act of God[2] and therefore, it cannot be liable for any tort damage resulting therefrom. *See Sayer v. Rural Co-Op Power Assoc.*, 225 Minn. 356, 360–361, 31 N.W.2d 15, 17 (1948) (where an act of God is the sole cause of an injury, liability can be placed on no one). Although it is undisputed Leander went off the road as the result of an unforeseen medical problem, Minn.Stat. § 561.04 is a damage statute for use in assessing damages for injury to trees in the absence of lawful authority. A common law analysis is misplaced. Because Leander was liable for the damages pursuant to section 561.04, appellant Farmington is liable based on the agency relationship created by operation of section 170.54, the Safety Responsibility Act.

Minn.Stat. § 170.54 provides that "in case of accident," the permittee will be deemed the agent of the owner of the vehicle. When the words of a statute are clear and free from ambiguity, the court is to give effect to the "plain meaning" of the statute. *Tuma v. Comm'r of Economic Sec.*, 386 N.W.2d 702, 706 (Minn.1986). The meaning of "accident" includes "an

event that takes place without one's foresight or expectation" or "an event which proceeds from an unknown cause." *Webster's Unabridged Dictionary* (2d ed. 1983). The injury to the trees resulted from an "accident." We affirm the trial court's finding that the safety responsibility statute operates to impose liability on appellant.

We agree section 170.54 is typically used to impose liability on the owner of a car for negligent operation by the owner's permittee. However, the statute is not restricted to negligence cases. Whether there was negligence by Leander or not, we need not decide. The Safety Responsibility Act reflects public policy to hold owners of motor vehicles responsible for damages caused by their permittees. We find no reason to deny the public policy underlying the Safety Responsibility Act in this case.

## DECISION

The trial court properly granted summary judgment for respondent and properly entered judgment for the stipulated single damages.

Affirmed.

---

2. Respondent claims this issue was not argued or presented to the trial court. However, appellant's answer does plead an "act of God" defense to this lawsuit.