[No. B022359. Second Dist., Div. Two. Aug. 11, 1987.]

TRANSAMERICA INSURANCE COMPANY, Plaintiff and Appellant, v.
HILL SAYBLE et al., Defendants and Appellants.
GERALD D. RAPHAEL et al., Defendants and Respondents.

**COUNSEL**

Flahavan, Hudson & Francis and Andrew J. Waxler for Plaintiff and Appellant.

Cotkin, Collins & Franscell and Kenneth S. Meyers for Defendants and Appellants

George E. Dalton, Michael G. Saliba, Booth, Mitchel, Strange & Smith, Robert Peter Weiss, Owen W. Strange and Brenda A. Bissett for Defendants and Respondents.

---

**OPINION**

**ROTH, P. J.**—Transamerica Insurance Company and Hill Sayble appeal from the judgments in favor of Home Insurance Company and New England Reinsurance Company after the trial court granted their motions for summary judgment. The issue is whether Home Insurance and New England are required, under their professional liability policies issued to Sayble, to defend law suits based on business conflicts between members of a law firm, without any allegation of professional malpractice. Concluding that the answer is "no," we affirm.

Hill Sayble is an attorney who worked alone until December 1970. At that time Sayble joined forces with Gerald Raphael. Whether Raphael was an associate, a shareholder in a professional corporation, or a "de facto partner" is disputed. In any case, by 1983 Raphael had become dissatisfied and disillusioned with his share of the profits and Sayble's operation of the business. Sayble allegedly excluded Raphael from management, while mismanaging the practice and dissipating the firm's property and income.

In November 1983 Raphael proposed to Sayble that they part company. On November 19, 1983, Raphael left the firm. Sayble allegedly refused to pay Raphael compensation then owing to him, continued to mismanage the corporation, and sent letters to the firm's clients which allegedly defamed Raphael.

On May 15, 1984, Raphael filed an action against Sayble in Los Angeles Superior Court, stating causes of action for declaratory relief, dissolution of partnership, breach of contract, fraud, libel and slander, interference with prospective business advantage, violation of the California Labor Code, and conversion.

On July 3, 1984, Raphael filed a second action, in United States District Court, alleging violation of the federal Employee Retirement Income Security Act. (29 U.S.C. § 1132.)

Sayble tendered the defense of both actions to Transamerica, Home Insurance and New England. Transamerica agreed to defend Sayble. However, both Home Insurance and New England declined to defend Sayble.[1]

Thereafter Transamerica filed this action for declaratory relief on April 25, 1985, seeking a declaration as to the duties it owed to Sayble, as well as the duties of New England and Home Insurance.

Approximately a year later all three insurance companies moved for summary judgment. The hearing on the motions was held on June 6, 1986, at which the following colloquy occurred:

"MR. WAXLER [Transamerica's attorney] . . .

"I have read the tentative, Your Honor. The tentative seems to imply the requirements that there be in existence an attorney-client relationship between the plaintiff and the defendant in the underlying action.

"THE COURT: I don't mean to imply it. I mean to hold it as a ruling.

". . . . . . . . . . . . . . . . . .

"The whole purpose of that coverage is to protect the attorney or give coverage to the attorney when he is acting and dealing as [an] attorney with respect to his clients or people that may be directly connected with clients in a setting.

"It is not designed to cover situations involving disputes between the partners who jointly, apparently, had the policy. The firm did.

"It is just out of context. It is like a square block in a round hole."

---

[1] Home Insurance stated in its letter of June 11, 1984: "Please be advised that the Home Insurance Company declines coverage for this matter, and will not be furnishing you with a defense or with potential indemnification for any sums which may be awarded against you. . . . [I]nsurance coverage was not intended and does not operate to provide insurance benefits where members of the firm, be it a partnership or a professional corporation, dispute the actions of one another in connection with operation or a dissolution. No attorney-client relationship, no professional rendition of lawyer's service is in issue; to the contrary, the matter involves a business dispute and not a lawyer's services."

New England stated in a letter dated March 19, 1985: "We have received and reviewed a complaint filed on behalf of Gerald D. Raphael. The Complaint asserts allegations which originate from the dissolution of the partnership and do not fall within the definition of Professional Services. . . . We regret to inform you of our coverage denial; however, we are only able to honor those claims which occurred during the policy period and are covered under the policy issued by New England Reinsurance Corporation."

The court granted the summary judgment motions of Home Insurance and New England, and entered judgment accordingly on June 26, 1986. This appeal followed.

The principles underlying the interpretation of contracts, including insurance policies, are straightforward. ■ When reviewing a contract, we must independently construe the parties' agreement. Only when conflicting inferences arise from conflicting evidence, a situation not present here, is the trial court's determination binding on the appellate court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) ■ Contracts must be construed in harmony with the parties' intention at the time of contracting. (*Sayble* v. *Feinman* (1978) 76 Cal.App.3d 509, 513 [142 Cal.Rptr. 895].) ■ The interpretation must be fair and reasonable, not leading to absurd conclusions. (*Ibid.*) ■ The contract must be construed as a whole, without giving a distorting emphasis to isolated words or phrases. (*Edmond's of Fresno* v. *MacDonald Group, Ltd.* (1985) 171 Cal.App.3d 598, 603 [217 Cal.Rptr. 375].)

■ Both policies promised to pay damages incurred because of "any act, error or omission in professional services rendered or that should have been rendered . . . ." Professional services are rendered by "the insured," as defined, for "others."[2]

---

[2] The New England policy contained the following relevant provisions:

"I. INSURING CLAUSE

"A – *Professional Liability and Claims Made Clause*: To pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages as a result of claims first made against the Insured during the Policy Period;

"1. By reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured, or by any person for whose acts, errors or omissions the Insured is legally responsible; or

"2. Because of personal injury arising out of the coverage set forth in Insuring Clause A-1 . . . .

" . . . . . . . . . . . . . .

"II. DEFINITIONS

" . . . . . . . . . . . . . .

"D – Insured: Whenever used in this policy, means:

"1. The Named Insured.

"2. Any person or professional legal corporation, defined as a Named Insured, but who or which was, is now or hereafter becomes an employee (as lawyer or otherwise) of, or lawyer "of counsel" to, the Named Insured or Predecessor Firm(s).

"3. Any former owner, partner, officer, director or stockholder employee of the firm or predecessor firm(s) solely while acting in a professional capacity on behalf of such firm or firm(s).

" . . . . . . . . . . . . . .

"E. Named Insured: Whenever used in this policy, means the firm, the persons and the professional legal corporations named in item I of the Declarations, and any lawyer or professional legal corporation who or which, during the policy period, is or becomes an owner, partner, officer, director or stockholder employee of the firm.

This case is controlled by *Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286 [238 Cal.Rptr. 36]. In our opinion its analysis is solid, and we adopt it.

Blumberg and Zommick agreed to dissolve their law partnership. A dispute arose; Zommick sued Blumberg for misrepresentation, fraud and breach of fiduciary duty. Guarantee insured Blumberg under a policy containing relevant language similar to that in the policies at bench. Blumberg tendered his defense to Guarantee. Guarantee refused to defend and indemnify Blumberg. Blumberg sued Guarantee, which successfully demurred.

On appeal Division 3 of this court, per Arabian, J. stated:

> ". . . . . . . . . . . . . . . .
>
> "J. Professional Services: Whenever used in this policy, means all services rendered or which should have been rendered *for others*:
>
> "1. *By the Insured* in the Insured's capacity as a lawyer, notary, administrator of an estate, executor, guardian, trustee or in any similar fiduciary capacity in the conduct of the firm's business." (Italics added.)
>
> The Home Insurance policy contained the following relevant provisions, which are substantially the same as New England's: "The Insured: The word 'Insured,' whenever used in this policy, means: (a) The Named Insured firm or persons named in the Declarations, or any lawyer or professional legal corporation who during the policy period becomes a partner, officer, director or employee of the firm;
>
> "(b) any lawyer or professional legal corporation who was a former partner, officer, director or employee of the firm or predecessor firm(s) solely while acting in a professional capacity on behalf of such firms.
>
> ". . . . . . . . . . . . . . . .
>
> "COVERAGE
>
> "I. *Professional Liability and Claims Made Clause*: To pay on behalf of the Insured all sums in excess of the deductible amount stated in The Declarations which the Insured shall become legally obligated to pay as damages . . . .
>
> "(a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the insured's profession as a lawyer or notary public;
>
> "(b) because of personal injury and arising out of the professional services of the Insured as a lawyer or notary public;
>
> "(c) by reason of any act, error, omission or personal injury committed by any non-lawyer employee, but arising solely out of legal services rendered within the scope of such person's employment for the Named Insured . . . .
>
> "*When the Insured renders or fails to render services* as an administrator, conservator, receiver, executor, guardian, trustee, or in any similar fiduciary capacity, the Insured's acts and omissions in such capacity shall be deemed for the purpose of this section to be the performance of professional services *for others* in the Insured's capacity as a lawyer, provided that this coverage shall not apply to any loss sustained by the Insured as the beneficiary or distributee of any trust or estate.
>
> "Services performed *by the Insured* in a lawyer-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be the performance of professional services *for others* in the Insured's capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers." (Italics added.)

"In the basic coverage clause of its 'Lawyers Professional Liability Insurance Coverage' policy, Guarantee agrees to pay claims arising out of the insured's activities in rendering 'professional services for others' in his 'capacity as a lawyer.'

" . . . . . . . . . . . . . . . . . . .

"We conclude that at the time Blumberg made the alleged misrepresentations, he was not rendering professional services 'for others' nor acting in his 'capacity as a lawyer.' Rather, Blumberg was acting in his capacity as Zommick's law partner and the fact that he happened to be a lawyer was of no import whatever. Therefore, the basic insuring clause of the Guarantee policy provides no coverage to Blumberg for the acts alleged in the Zommick complaint.

### *"The Fiduciary Coverage Provision.*

"The fiduciary coverage provision likewise does not provide coverage for Blumberg's alleged misrepresentations and breach of the fiduciary duty he owed Zommick. . . .

"The language of the [fiduciary coverage] clause does not describe fiduciary duties in general. Rather, it describes court-appointed positions which lawyers accept typically in conjunction with, or as a part of, their *lawyering* duties.

"Blumberg argues, however, that he is entitled to coverage because he was acting as a fiduciary when the acts alleged in the Zommick complaint occurred. He cites for that proposition *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180], in which the Court of Appeal quoted from a recent California Supreme Court case (*Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal. Rptr. 377, 658, P.2d 740]) as follows: ' "In *Page* v. *Page* (1961) 55 Cal.2d 192, 197 [10 Cal.Rptr. 643, 359 P.2d 41], we observed: 'We have often stated that "Partners are *trustees* for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind." [Citations.]' " ' (146 Cal.App.3d at p. 214, italics added.)

"While Blumberg may have been an implied-in-law trustee for Zommick under *Rosenfeld,* that is not the type of relationship reasonably contemplated by the fiduciary coverage provision of the Guarantee policy. We refuse to so construe that clause because it cannot be said that a law partner acting in

his capacity as a *partner* is performing a 'professional service for others in [his] capacity as a lawyer.' (Italics added.)" (*Blumberg* v. *Guarantee Ins. Co., supra,* 192 Cal.App.3d at pp. 1292-1293.)

*Blumberg* is dispositive of the case at bench. The two insurance policies are malpractice policies. Thus, there must be malpractice if professional liability coverage is to apply. We reject the simplistic literalism urged on us by appellants: using the word "others" instead of "clients" is not significant. To hold otherwise would do violence to the obvious intent of the parties.

We do not say that an insurance policy cannot cover both professional malpractice and legal actions arising from business disputes within a law firm. But the policies at bench do not provide such broad protection.

The judgments are affirmed.

Gates, J., and Fukuto, J., concurred.

A petition for a rehearing was denied August 31, 1987.