Dave F. SENGER, et al., Respondents,

v.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, Appellant.

No. C2-87-1206.

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Feb. 12, 1988.

James F. Roegge, Robert E. Salmon, Meagher, Geer, Markham, Anderson, Flaskamp & Brennan, Minneapolis, for respondents.

John M. Degnan, Mark P. Hodkinson, Bassford, Heckt, Lockhart & Mullin, P.A., Minneapolis, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from the trial court's grant of summary judgment on two issues. The trial court ruled that the insurer breached its duty to defend under its contract with the insured, but that the insurer had no duty to indemnify the insured for damages sustained as a result of a lawsuit against them by a third party. We reverse the trial court on the insurer's duty to defend, and affirm the trial court's determination that there was no duty to indemnify.

## FACTS

*The underlying litigation.* In the summer of 1981, Valerie Kolbert and Doreen Treat considered the possibility of owning a diet center franchise. Treat worked at an existing Nutri/System franchise. They mentioned their idea to the wife of respondent Voeller, who suggested that the women meet with her husband, an attorney at the law firm of Wiese & Cox.

Kolbert met with Voeller at his law office on September 10, 1981. They discussed the women's plans to buy a franchise. Kolbert indicated that she sought both help to form a corporation and the funds to put one together. Voeller then contacted other Nutri/System franchisees to gather information regarding sales and operation costs. Voeller had never heard about Nutri/System before talking with Kolbert.

On October 3, 1981, both Kolbert and Treat met with the three respondent attorneys at Voeller's office. All three were employed at Wiese & Cox. The attorneys told the two women that they were not interested in lending them money, but were interested in applying for a franchise, investing in the business themselves, and employing the women in the business. The attorneys indicated that if they were investors, they could not act as the women's lawyers.

Voeller then contacted the franchisor to obtain materials for starting a franchise. He told the franchisor he had terminated his relationship with Kolbert. On October 9, 1981, six days after their initial conference with Kolbert and Treat, all three attorneys applied for the franchise.

On October 13, 1981, the two women met with the attorneys for a second time. The attorneys told the women they were applying for a franchise themselves, and discussed employing (with options to purchase stock) the women in the new venture. No employment agreement was reached.

On October 19, 1981, the attorneys met with their firm's managing partner, who inquired as to whether the three had previously withdrawn from representation. After indicating they had not done so in writing, Voeller wrote the women and informed them that the attorneys no longer represented them "since the nature of our relationship has changed." The women were orally advised at an earlier time that the respondents no longer represented them.

On October 22, respondents sent the women draft employment agreements and stock options.

A third meeting was held on October 27. Voeller told the women that he received approval for the franchise. Employment agreements and stock options again were discussed.

On October 28, the attorneys wrote Kolbert "terminating our relationship with you."

The franchise was opened under the ownership, management, and control of the attorneys; Treat became an employee. The relationship between the attorneys and Treat deteriorated after the attorneys misrepresented the value and condition of the business when she was exercising her stock option. The attorneys also voted a reverse stock split to effectively preclude her participation in the business.

The women filed separate lawsuits. Both actions alleged similar causes of action: tortious interference with prospective business opportunity, intentional misappropriation of business opportunity, "prima facie tort," negligent/intentional misrepresentations (regarding holding client information confidential and acting in their client's best interests), breach of fiduciary duty arising out of attorney-client relationship, and attorney negligence amounting to malpractice.

The defense of the lawsuits was tendered to the attorneys' professional liability insurer, appellant Minnesota Lawyers Mutual Insurance Company (MLM), pursuant to the policy. The tender letter of July 23, 1984 (advising them of the Treat lawsuit) indicated "[t]his action arises out of a business owned by Defendants Voeller, Sangalis, and Senger." After receiving this letter and the complaint, MLM denied coverage to defend and to indemnify based on the following exclusions in the policy:

(1) Any act or omission of the insured committed with actual fraudulent, dishonest, criminal or malicious purpose or intent.

\* \* \*

(3) Any claim made in connection with any business enterprise, not named in the declarations, which is:

  (a) Owned by the insured; or

(b) In which any insured is a partner or employee; or

(c) Directly or indirectly controlled, operated or managed by any insured.

\* \* \*

(6) Any claim arising out of an insured's activities as an officer or director of an employee trust, charitable organization, corporation or business other than that of the named insured.

MLM later was informed of the Kolbert lawsuit. It denied coverage for those claims on the same grounds.

The attorneys retained their own counsel to defend the suits.

The Treat lawsuit was tried in December 1984. The jury returned a special verdict finding both liability and damages. In part, the special verdict contained the following specific findings:

1. Was there an attorney client relationship between defendants and plaintiff? Answer yes or no. <u>Yes.</u>

2. Did defendants wrongfully appropriate unto themselves a business opportunity belonging to the plaintiff? Answer yes or no. <u>Yes.</u>

In its instructions to the jury on question 2, the court directed:

> In order to answer this question yes, you must find the following: \* \* \* that such conduct on the part of the defendants was intentional.

Both the Treat and Kolbert actions subsequently were settled.

*Senger, et al. v. MLM.* The attorneys brought this declaratory judgment action to determine whether the liability insurer, MLM, breached its duty to defend and indemnify under respondent attorneys' professional liability insurance contract. Both parties moved for summary judgment.

The trial court ruled that MLM was collaterally estopped from relitigating the issue of whether there was an attorney-client relationship between the women and the attorneys. The trial court reasoned that, since the wrongful appropriation occurred during the attorney-client relationship, the

behavior was covered by the insurance policy. The court found that since no outside business enterprise existed at the time the attorneys began their attorney-client relationship with Treat and Kolbert, the outside business exclusions did not apply. The court concluded there was a duty to defend, but that the duty to indemnify was precluded by the implicit finding in the earlier litigation that the attorneys acted in an intentionally dishonest manner by misappropriating the business opportunity. Their actions thus fell within the policy exclusion for intentional acts.

## ISSUES

1. Did the trial court err in applying the doctrine of collateral estoppel to preclude relitigation of issues decided in the underlying suit?

2. Did the trial court err in granting summary judgment on the insurer's duty to defend and indemnify the insured attorneys?

## ANALYSIS

On appeal from summary judgment, the reviewing court is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). Both parties agree that there is no dispute as to any issue of material fact, so our review is limited to an application of the relevant law.

■ 1. The doctrine of collateral estoppel applies to insurance contracts if the insured gives the insurer notice of the pendency of the action and an opportunity to defend on his behalf. *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822, 825 (Minn.1980).

■ MLM asserts that it was not in privity with respondents, so it is not bound by the issues decided in the Treat litigation. While *Brown* does not specifically state that privity exists as a matter of law in such circumstances, further guidance can be gleaned from indemnification case law. For collateral estoppel purposes, the

Minnesota Supreme Court has treated insurance and indemnification contracts in a similar manner. *See Brown,* 293 N.W.2d at 825. Where a lawsuit has been tendered to a proposed indemnitor under a contract of indemnity, issues necessarily decided in the ensuing trial are *conclusively* established against the indemnitor. *State Bank v. American Surety Co.,* 206 Minn. 137, 141, 288 N.W. 7, 9 (1939). We believe that the same rule applies in the insurer-insured context. Where the insurer refuses to defend an action properly tendered to it, the issues necessarily decided in that litigation are conclusively established against the insurer. Privity, in these circumstances, exists as a matter of law.

■ 2. The construction of language in an insurance contract presents a question of law for the court. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978). Questions of law are reviewable on a *de novo* basis. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977).

The insurance policy in question provides coverage for:

all sums which the insured will be legally obligated to pay as damages * * * [r]esulting from the rendering of or failing to render legal * * * services for others[.]

■ Respondents assert that the business activities exclusions are not applicable because their liability flows from the attorney-client relationship. They claim the mere existence of this relationship made the misappropriation claim actionable. We disagree. There will always be an attorney-client relationship when these exclusions are at issue. Absent an attorney-client relationship, the insuring agreement does not apply and the language of the specific exclusions does not come into play. Respondents' contention would create an illogical result; the policy exclusions would be rendered entirely meaningless and of no effect. The mere existence of an attorney-client relationship cannot be sufficient to bar the application of the relevant exclusions.

The finding that the attorney-client relationship existed brings the transaction, as a threshold matter, within the coverage of the policy. However, the analysis of the claim does not end at this point. We must determine whether, under the unique facts and circumstances of this case, the relevant exclusions apply.

*a. The duty to defend.*

■ The duty to defend under an insurance policy is distinct in form and broader in scope than the duty to indemnify. *Brown*, 293 N.W.2d at 825. The obligation to defend generally is determined by the allegations of the complaint. *State Farm Fire and Casualty Co. v. Williams*, 355 N.W.2d 421, 424 (Minn.1984). Generally, if any part of the cause of action against the insured arguably falls within the scope of the coverage, either on the face of the complaint or from facts known to the insurer, the insurer must defend all claims. *Johnson v. Aid Ins. Co. of Des Moines, Ia.*, 287 N.W.2d 663, 665 (Minn.1980).

■ When it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability, no duty to defend arises even if the complaint can be read to allege a set of facts which, if proved, would be within coverage of the policy. *Farmers & Merchants State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 309 Minn. 14, 18, 242 N.W.2d 840, 844 (1976). When the insured makes admissions to the insurer that place the claim within the exceptions to coverage under the policy, the insurer has no duty to defend. *Weis v. State Farm Mutual Auto Ins. Co.*, 242 Minn. 141, 147, 64 N.W.2d 366, 369 (1954).

We find *Weis* controlling in the case before us. In *Weis,* the insured had collided with plaintiff's car. The plaintiff sued the insured, alleging both acts of negligence (covered under the policy) and of intentional wrongdoing (not covered under the policy). Based upon only the complaint, the insurer was initially obligated to defend the insured because the complaint stated an insurable cause of action under negligence, even though any intentional act would not

have been covered under the policy. *See Johnson.*

The insured, however, then told the insurance company that he intentionally struck the plaintiff's vehicle. The insurer thereupon refused to defend, based upon the policy's intentional acts exclusion. The Minnesota Supreme Court upheld the insurance company's refusal to defend the lawsuit:

> [W]e are faced with the admissions of [the insured], from which it is only possible to conclude that his acts giving rise to the suit were outside the coverage afforded by the policy.

*Weis* at Minn. 147–48, 64 N.W.2d at 370.

■ In this case, both the *Kolbert* and the *Treat* complaints arguably allege claims under the coverage of the policy. However, when the complaints were forwarded to the insurer, the accompanying letter specifically stated that this "action arises out of a business owned by Defendants Voeller, Sangalis, and Senger." MLM relied on this admission in denying defense of the claim, and respondents made no attempt to answer, correct, or modify their statement after MLM denied coverage. We agree that this admission takes the claim outside of the coverage of the policy. Where the language of the insurance policy is unambiguous, the language must be given its ordinary and usual meaning. *Eastern Aviation and Marine Underwriters, Inc. v. Gilbertson*, 379 N.W.2d 567, 569 (Minn.Ct.App.1985). The policy clearly and unambiguously excludes claims "made in connection with any business * * * not named in the declarations" which is owned, directed, or controlled by the insured. An action which admittedly "arises out of a business owned" by the attorneys in this case clearly falls within this policy exclusion.

*b. The duty to indemnify.*

Our determination regarding the duty to defend does not end our inquiry. There is authority indicating circumstances exist under which an insurance company initially may refuse to defend an action, yet the

duty to defend and indemnify may again arise.

■ When the insurer rightfully refuses to defend, the insured then may revive the insurer's duty to defend and indemnify by coming forth and making "some factual showing that the suit is actually one for damages resulting from events" which fall within the policy terms. *Johnson*, 287 N.W.2d at 663 (Insurer initially may rely on allegations of complaint to determine whether to provide defense; insured must then make some factual showing to insurer that suit was actually one for damages from events which do fall within policy terms).

■ The attorneys were able to show the existence of an attorney-client relationship between them and the plaintiffs by virtue of the general finding in the prior lawsuit. However, we do not agree that the jury's general finding of an attorney-client relationship is enough to overcome the prior admission that the action arose out of a business owned by the attorneys. There is nothing in the record which would undermine their prior admission and show that the circumstances of the claim were covered by the insurance policy. They thus are bound by the admission that the claim arose out of a business they owned. As this admission brings the claim clearly within the exclusion of the policy, the attorneys have failed to overcome the burden placed upon them by *Johnson*.

### DECISION

The trial court erred in granting summary judgment for the attorneys on the insurer's duty to defend. That portion of its judgment is reversed. The trial court's determination that MLM was under no duty to indemnify is affirmed.

Reversed in part and affirmed in part.