804 P.2d 759

**POTOMAC INSURANCE COMPANY, a foreign insurance company authorized to do business in Arizona, and Shand–Morahan Company, its managing underwriters, Plaintiffs–Appellees,**

**v.**

**Frank D. McINTOSH; Donald McIntosh and Webster Lehmann, Jr., Defendants–Appellants.**

**No. 1 CA–CV 88–288.**

Court of Appeals of Arizona, Division 1, Department B.

April 17, 1990.

Review Denied June 6, 1991.

Vermeire & Turley, P.C. by Richard N. Crenshaw, Phoenix, for plaintiffs-appellees.

Farley, Robinson & Larsen by James J. Farley, Phoenix, for defendants-appellants.

## OPINION

JACOBSON, Judge.

The issue on appeal is whether an attorney's professional liability insurance covers

his action when dealing in a business context with his clients. The appeal arises from a summary judgment granted in favor of appellees on the basis that no insurance coverage existed for claims made by appellants against appellees' insured.

## FACTS AND PROCEDURAL HISTORY

Sometime during 1982–83, attorney Phillip D. White orchestrated the formation of a limited partnership known as Southwest Arizona Developers Limited Partnership (Southwest). White was the general partner and appellants Frank and Donald McIntosh, Webster Lehmann, Jr. (appellants), and others were limited partners. White and his firm, White, Waddell & Associates, P.A., had previously represented appellants in connection with various legal matters. In July 1983, Southwest was formally created. After Southwest experienced the financial difficulties which gave rise to this litigation, White resigned as general partner in February 1984, and left the country. The McIntoshes were substituted as general partner of Southwest in White's place. As a result of their investment in Southwest, appellants lost over $260,000.[1]

In September 1985, appellants and others filed an amended six count complaint in Maricopa County Superior Court against Phillip White, Seid Waddell, and White, Waddell & Associates, P.A., alleging attorney malpractice, breach of fiduciary duty, fraud, fraudulent sale of unregistered securities, breach of contract, and negligence. (Cause No. C–515255). White's professional liability insurance carrier, Potomac Insurance Company, and its underwriter, Shand–Morahan Company (appellees), accepted White's defense under a reservation of rights.

Appellees filed a complaint for declaratory relief which gave rise to this appeal against White and his firm, seeking a declaration that no coverage existed under White's malpractice insurance policy for either indemnity or defense in connection with appellants' claims in Cause No. C–515255.

With appellees' approval, White entered into a settlement agreement with appellants in Cause No. C–515255, assigning White's rights under the policy, if any, to appellants. In conjunction with the agreement, a second amended complaint was filed by appellants alleging a single count of attorney malpractice with damages of $234,542.69. Appellants were substituted as defendants in the declaratory judgment action. Waddell was dismissed with prejudice.

Appellees moved for summary judgment in November 1987, arguing that attorney White's activities were excluded from coverage by the terms of the liability policy, which specifically provided that:

1. This policy does not apply:

. . . .

(b) to any claim made by *or against any business enterprise not named in the Declarations ... in which the Insured is a partner ...* or which is controlled, operated or managed by the Insured, either individually or in a fiduciary capacity ...

(c) to liability arising out of the Insured's services and/or capacity as:

(1) an officer, director, [or] *partner ... of a business enterprise....*

(Emphasis added.) Appellees argued that White was a general partner in Southwest, and that appellants' claims arose solely in connection with White's participation in that partnership. Thus, the quoted exclusion applies.

Appellants' cross-motion for summary judgment and response argued that White "wore two hats"—one as a general partner of Southwest, and the other as attorney for appellants and for the partnership. They argued that they were only seeking recovery for White's negligence committed in his role as an attorney, and that therefore the "business enterprise" exclusion does not apply.

The trial court granted appellees' motion for summary judgment and denied appellants' cross-motion, specifically finding that

---

1. Apparently, Lehmann only lost his initial investment in the partnership. At least the major- ity of the $260,000 loss is attributable to the McIntoshes.

no coverage existed for the matters alleged in Cause No. C-515255:

> Although Defendants have sought to cast it otherwise, the test is, or at least should be, the expectations of the client. The policy terms are not vague or ambiguous and require no construction. It is clear that if the liability-incurring event arose out of the business or the insured's activities as a partner in the business, coverage does not apply.
>
> Defendants have urged that it was White's failure to disclose potential conflict to which the Court ought to look. That may have been some obligation as either partner or lawyer, but it was not the liability-incurring event. The liability-incurring event was actually the activities more specifically described in the earlier Amended Complaint and not those alleged in the Second Amended Complaint.

Formal judgment in accordance with the trial court's ruling was entered on April 1, 1988, and appellants timely appealed.

## DISCUSSION

Appellants' argument that the business enterprise exclusion does not apply rests on the contention that White committed acts of malpractice in his capacity as an attorney. In support of this contention, appellants claim that White negligently (1) failed to advise appellants of the risks inherent in an investment in a limited partnership; (2) failed to warn appellants of the existence of possible conflicts of interest; (3) induced appellants to sign the partnership documents without full disclosure of their effect; and (4) induced appellants to sign at least one personal guarantee for a partnership loan without disclosing to them the effect of such guarantee.

Assuming that White may have been liable for negligent acts committed in his capacity as an attorney does not determine the question of whether that negligence falls within the coverage of the policy. *See Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346, 1350-51 (1977). In order to determine that question, the proper focus of our inquiry is the proximate or direct cause of appellants' loss: attorney negligence or business reverses. *See id.*

In support of their cross-motion for summary judgment, appellants admit that "[a]s a result of this investment [appellants] lost $264,201.96." Although the record on appeal is somewhat unclear, it appears that appellants' loss was occasioned by two events. First, appellants became liable to various Southwest creditors by virtue of the McIntoshes' substitution as general partner of Southwest after White's resignation. *See* A.R.S. § 29-319(a). Second, Southwest apparently defaulted on certain partnership loans, resulting in appellants' ultimate liability on one of these loans which they had personally guaranteed.

■ Thus, White's alleged negligent acts, arguably committed in his capacity as an attorney, in inducing appellants to invest as limited partners and to guarantee partnership loans may have indirectly caused appellants' loss, but they were not the proximate cause. Rather, the proximate and direct cause of appellants' loss was Southwest's present inability to pay the loan appellants had personally guaranteed, and the loss of statutory protection against partnership creditors after the McIntoshes' substitution as general partner of Southwest upon White's resignation. This loss is directly attributable to Southwest's business failure—not to White's actions as an attorney for either appellants or the partnership.

Our analysis of this issue in terms of causation is supported by *Aragona v. St. Paul Fire & Marine Ins. Co.*, in which the Maryland Court of Appeals stated:

> Whether a policy covers a loss caused by excluded as well as covered acts has been found by other courts to turn on the proximate, efficient, dominant or direct cause of the loss; if that cause is within the exclusion, the policy does not cover the loss.

378 A.2d at 1350 (citations omitted). The *Aragona* court found that the dishonest and criminal acts of one insured attorney were the proximate cause of the appellants' loss, and that, while his partner's negli-

gence may have been a contributing cause, it was indirect and remote. *Id.* at 1350–51. Thus, the policy exclusion for losses resulting from dishonest, fraudulent, or criminal acts applied and was "all-encompassing." *Id.* at 1351.

■ The business enterprise exclusion in a professional liability insurance policy prevents an attorney "from being able to sue himself for professional errors that he committed while performing professional services for a business that he owned or controlled." *Continental Cas. Co. v. Cole,* 809 F.2d 891, 896 (D.C.Cir.1987). White's status as attorney for appellants and Southwest does not mandate that there be coverage for acts arising out of his business relationship with clients. We agree with the court in *Senger v. Minnesota Lawyers Mutual Ins. Co.,* 415 N.W.2d 364 (Minn.App.1987), which found that the mere existence of an attorney-client relationship will not be sufficient to bar the application of a relevant policy exclusion. *Id.* at 368.

> There will always be an attorney-client relationship when these exclusions are at issue. Absent an attorney-client relationship, the insuring agreement does not apply and the language of the specific exclusions does not come into play....
>
> The finding that the attorney-client relationship existed brings the transaction, as a threshold matter, within the coverage of the policy. However, the analysis of the claim does not end at this point. We must determine whether, under the unique facts and circumstances of this case, the relevant exclusions apply.

*Id.* at 368–69. *Cf. General Accident Ins. Co. v. Namesnik,* 790 F.2d 1397, 1400 (9th Cir.1986) (fact that insured was at all times pertinent appellants' attorney was not responsive to uncontroverted evidence which established that, as to the transactions in question, insured acted as a business agent rather than an attorney).

The *Senger* court found that the insured attorneys' letter tendering defense of the actions to the insurer constituted an admis-sion that took their claim outside the coverage of the policy.

The policy clearly and unambiguously excludes claims 'made in connection with any business ... not named in the declarations' which is owned, directed, or controlled by the insured. An action which admittedly 'arises out of a business owned' by the attorneys in this case clearly falls within this policy exclusion. 415 N.W.2d at 369. Similarly, the policy at issue in this case clearly excludes from coverage any losses incurred as a result of White's participation as a partner in a business enterprise other than White, Waddell & Associates. Appellants admit that their loss of over $260,000 was a result of their investment in Southwest.

For the most part, the cases cited by the dissent do nothing to undercut this rationale, and in fact do not even address the issue presented in this case. *See, e.g., Jensen v. Snellings,* 841 F.2d 600 (5th Cir. 1988) (issue whether attorney's investment advice was professional legal services covered under policy; business enterprise exclusion not an issue); *Continental Cas. Co. v. Burton,* 795 F.2d 1187 (4th Cir.1986) (holding that attorney acted as fiduciary or trustee when accepting clients' funds, and that the policy covered acts of attorney as fiduciary; business enterprise exclusion not an issue); *Regas v. Continental Cas. Co.,* 139 Ill.App.3d 45, 93 Ill.Dec. 661, 487 N.E.2d 105 (1985) (issuance of escrow check by attorneys on behalf of client to close client's real estate purchase constituted the practice of law; business enterprise exclusion not an issue); *Miles v. St. Paul Fire & Marine Ins. Co.,* 381 So.2d 13 (Ala. 1980) (attorney who invested clients' funds in attorney-client trust fund was covered under policy because attorney was acting in a fiduciary capacity; business enterprise exclusion not an issue).

While *Pacific Indem. Co. v. Linn,* 766 F.2d 754 (3d Cir.1985) did involve interpretation of a policy with a business enterprise exclusion, the court found that term to be ambiguous, and therefore construed the policy against the insurer.[2] *Id.* at 762.

---

**2.** The court also found the terms "operation,"

"professional service," "Physicians Offices," and

However, such is not the case here, as the policy at issue clearly provides that it does not apply to "any claim made by or against any business enterprise not named in the Declarations ... in which the Insured is a partner...." The claimed losses in this case resulted from a business enterprise known as Southwest, in which White was a partner. Southwest was not named in the declarations.

We hold that the language of the business enterprise exclusion in White's professional liability insurance policy is unambiguous and precludes recovery here. *See Travelers Indem. Co. v. State,* 140 Ariz. 194, 680 P.2d 1255 (App.1984).

## CONCLUSION

The judgment of the trial court is affirmed. We grant appellees' request for attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A), upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

VOSS, P.J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. I believe that it was error to grant summary judgment for the insurer because, in my opinion, some of the things this attorney failed to do arguably were within the coverage clause of the policy and arguably were the proximate cause of at least some of the loss. In my opinion, it is not clear that the clause of the policy which excludes coverage for losses incurred as a "partner of a business enterprise" was meant to apply to the situation that is present here.

I begin with the nature of the relationship between Phillip White and the appellants, Frank McIntosh, Don McIntosh, and Webster Lehmann, Jr. Before the limited partnership in question was formed, White represented both of the McIntoshes, as their attorney in connection with a number of matters, and had also given Lehmann, as a friend, casual legal advice from time to time.

"manufacturing a product" to be ambiguous.

The limited partnership was formed sometime in 1982 or 1983. In late 1983, the limited partnership paid White a fee of $25,000. The precise nature of the fee is not clear, but it was apparently intended in part as payment for White's past and future legal services. White described this fee as follows:

Well, it wasn't so much an advance legal fee as it was paying for services that had been indeed rendered and, basically, to—to—I went to the partners and told them that I just could not afford to let the law practice go down and not—even though the agreement said I was to be paid $5,000 a month, they didn't have that kind of money to pay, so I did the work virtually for free, but it took me away from the law practice.

So when I discussed this, I just can't afford to let the law practice go and run this for no money, they said, well, we'll give you $25,000, you can use that to get things straightened out at the law practice and spend more time working on Southwest. I agreed to do that and to provide them with legal services then, of course.

Q. In the future?
A. Well, for things that had already been done, but I also agreed that we could continue to serve them.

The insurance policy in question covered White and his law firm for damages caused by "any act, error or omission in professional services rendered or that should have been rendered by the Insured ... arising out of the conduct of the Insured's profession as a lawyer" but excluded coverage for "liability arising out of the Insured's services and/or capacity as ... 1. [a] ... partner ... of a business enterprise...."

The appellants claim that White did a number of things in connection with the limited partnership that constituted the rendition of legal services to them. They point to six specific areas where they say that there are at least disputed questions of fact as to whether White's actions or failure to act renders him liable to them

766 F.2d at 763, 765.

within the coverage of the policy. The first of these is his advice to them to enter into the limited partnership agreement. The second is whether his position as their attorney actually induced them to participate. The third concerns White's supposed failure to explain the details of the partnership agreement to them. The fourth relates to whether White, as both a general partner and the attorney for the limited partnership had a conflict of interest which he was required to explain to the appellants. The fifth concerns whether White had a duty to the appellants to have dissolved the partnership at an early date to curtail expenses, such as the fees paid to him, which were draining the partnership. Finally, they say that as their attorney, White had a duty to explain to them that in signing a personal guarantee in favor of the Rio Salado Bank they were giving up the valuable protection of the limited liability enjoyed by limited partners.

Some of the appellants' claims relate more to the conduct of a business enterprise than they do to the practice of law. I believe that a finder of fact could conclude, however, that White's conduct in allegedly failing to advise the appellants concerning the legal effect of participating in the management of the partnership, and the alleged failure to advise them of the legal effect of signing the personal guarantees, were omissions arising out of White's conduct of his profession as a lawyer.

### THE COVERAGE CLAUSE AND PROXIMATE CAUSE

I first address the question of whether White's conduct was within the policy coverage without regard to the exclusion clause. Neither the insurer nor the majority takes direct issue with the proposition that advising a client as to the effect of activities which may jeopardize his limited liability, and advising a client about the nature of a personal guarantee, is the kind of thing that lawyers typically do. The majority relies on *Aragona v. St. Paul Fire & Marine Ins. Co.*, 281 Md. 371, 378 A.2d 1346 (1977), for the proposition that, even if White was acting in his capacity as

a lawyer, his negligence was not covered by the policy if it was not the proximate or direct cause of the loss. According to the majority, the proximate and direct cause of the loss was the fact that the investment failed and the limited partnership could not pay the loans which the appellants had guaranteed. Several things undercut this conclusion.

First and most important, the business could have failed and the appellants might not have suffered the extra losses that ensued by reason of their having become general partners, and as a result of the guarantees they signed, if White had properly advised them of their immunity as limited partners and the effect of signing the guarantees. That, to me, is a sufficiently direct connection to qualify White's alleged negligence as a proximate cause of the loss. There may be more than one proximate cause of a loss. *McDowell v. Davis*, 104 Ariz. 69, 448 P.2d 869 (1968).

Second, *Aragona* is not the only word on the subject. Other cases recognize, without any discussion of proximate cause, that conduct of lawyers in White's situation is insured under coverage clauses like the one in White's policy. *See Jensen v. Snellings*, 841 F.2d 600 (5th Cir.1988); *Continental Casualty Co. v. Burton*, 795 F.2d 1187 (4th Cir.1986); *Regas v. Continental Casualty Co.*, 139 Ill.App.3d 45, 93 Ill.Dec. 661, 487 N.E.2d 105 (1985); *Miles v. St. Paul Fire & Marine Ins. Co.*, 381 So.2d 13 (Ala.1980). *But see Cohen v. Employer's Reinsurance Corp.*, 503 N.Y.S.2d 33, 117 A.D.2d 435 (1986). I turn, then, to whether the clause that excludes coverage for White's acts as a partner in any business enterprise applies.

### THE CLAUSE EXCLUDING COVERAGE

The case which I consider to be most closely on point on this issue is *Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (3d Cir.1985). The question presented there was the application of a clause in a physician's malpractice policy that excluded coverage "growing out of the ownership, operation or supervision of the Insured ... of

... (b) any business enterprise, whether or not related to patient care and/or treatment...." The policy holder, a doctor, had written and published a diet book that allegedly harmed people who followed the advice it purveyed. The doctor's malpractice insurer brought a declaratory judgment action to determine whether it was obligated to defend the doctor and to pay any judgment recovered against him. The district court decided that the meaning of "business enterprise," which was not defined in the policy, was unclear. It therefore applied the well known rule and construed the policy against the insurer. The court of appeals agreed, recognizing that it would be absurd to construe the language to exclude coverage for all of the doctor's medical "business" and saying:

> Recognizing the absurdity of this position, however, the clause gives no indication of precisely what is and what is not excluded from coverage. The insured physician reasonably could have expected that a professional liability policy would provide coverage for lawsuits alleging medical malpractice or professional negligence even though they arise from the publication and sale of a book.

*Id.* at 762.

I believe that White, like the doctor in *Pacific Indemnity v. Linn,* could reasonably have expected that he was covered by insurance when he gave, or failed to give, legal advice to clients with whom he was investing money. I have no particular difficulty, in the case before us, of imagining how the exclusion clause in question might be given effect and still not extend to preclude recovery for the negligence White may have committed. Most lawyers work in partnership or some kind of association with other lawyers. Those associations are, in and of themselves, "business enterprises." The lawyers sometimes make careless decisions about the conduct of those associations and losses ensue. The insurance policy we construe does not cover those kinds of losses. *See Transamerica Ins. Co. v. Sayble,* 193 Cal.App.3d 1562, 239 Cal.Rptr. 201 (1987).

The majority relies on two cases, *Senger v. Minnesota Lawyers Mut. Ins. Co.,* 415 N.W.2d 364 (Minn.App.1987) and *General Accident Ins. Co. v. Namesnik,* 790 F.2d 1397 (9th Cir.1986), to support its conclusion. I do not find them persuasive. In *Senger,* the conduct of the attorneys involved was characterized as an "action [arising] out of a business owned by [the attorneys]." *Senger,* 415 N.W.2d at 369. This assertion was treated as an admission, and the conduct was deemed excluded under a clause similar to the one in issue in this case. This admission represents a critical distinction between *Senger* and this case, in which the appellants have consistently asserted that White was acting as their attorney.

In *Namesnik,* the attorney solicited his clients to invest in entities which he formed and operated and which lost money. The attorney rendered legal services for the entities, but he did not charge for any work performed for the venture. In affirming a grant of summary judgment for the insurer, the court relied heavily on the fact that no fees had been charged. In the case before us, there is some evidence upon which a finder of fact could come to the conclusion that fees had been paid for the rendition of legal advice relating to the venture.

I would reverse the grant of summary judgment and remand this matter for trial.